FILED
08/15/2024
Peg L. Allison
CLERK
Flathead County District Court
STATE OF MONTANA
By: Brittney Colacino
DV-15-2024-0001072-OC
Allison, Robert B
2.00

1

KIMBERLY S. MORE
SELENA Z. SAUER

2

CROWLEY FLECK PLLP
219 E. Center Street

3

P. O. Box 759
Kalispell, MT  59903-0759

4

Telephone:     (406) 752-6644
Facsimile:     (406) 752-5108

5

kmore@crowleyfleck.com
ssauer@crowleyfleck.com

6

7

Attorneys for Plaintiff

8

9

MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

10

| VALUE ADDED HOLDINGS III, LLC, | ) | Cause No.:  DV-15-2024-0001072-OC |
|---|---|---|
| | ) | |
| Plaintiff, | ) | District Judge: Robert B. Allison |
| | ) | |
| vs. | ) | **FIRST AMENDED COMPLAINT** |
| | ) | |
| MULE SHOE OUTFITTERS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

11

12

13

14

15

16

Plaintiff Value Added Holdings III, LLC ("VAH"), by and through its counsel of

17

record makes the following First Amended Complaint:

18

**Parties and Venue**

19

1.     Plaintiff Value Added Holdings III, LLC is an Arizona limited liability

20

company with its principal place of business located in Mesa, Arizona.

21

2.     Defendant Mule Shoe Outfitters, LLC ("Mule Shoe") is a Montana limited

22

liability company with its principal place of business located in West Glacier, Montana.

23

24

1         3.      Mule Shoe is the owner of certain real property described as Parcel A of

2   Certificate of Survey No. 20952, Flathead County Records (the "Property").

3         4.      The Property which is the subject of this action is located in Flathead County.

4         5.      The Court has jurisdiction over this matter pursuant to § 3-5-302(1)(b) & (c),

5   MCA.

6         6.      Venue is property in this matter pursuant to § 25-2-123(2)(a), MCA.

7                                 **<u>General Allegations</u>**

8         7.      VAH incorporates by reference the allegations contained in paragraph 1

9   through 6 of the Complaint as if fully restated herein.

10        8.      VAH and Mule Shoe entered into a buy-sell agreement (the "Agreement")

11   dated March 7, 2024, which was amended by counteroffer dated March 15, 2024, whereby

12   VAH agreed to purchase the Property from Mule Shoe for Three Million Four Hundred

13   Ninety-five Thousand Dollars ($3,495,000.00).  A true and correct copy of the Agreement is

14   attached as Exhibit 1.

15        9.      The terms of the Agreement provided that VAH would acquire the real

16   property and personal property and business operations and assets associated with the Gringo

17   "food trailer," the Wandering Gringo and Glacier View Weddings.

18        10.     VAH and Mule Shoe agreed that the Property would be purchased under a

19   contract for deed with VAH an earnest money deposit of $35,000.00 and an additional

20   $715,000.00 cash at closing.  The remainder of the purchase price was to be seller financed

21   under the following terms:

22

23

24

1    in entirety and replace with the following:"Seller's attorney shall prepare Seller's

2    Financing Contract For Deed in accordance with standard terms and conditions, including
     an executed Deed in Escrow, and a recorded Notice of Purchaser's Interest.Real estate

3    taxes shall be paid by the Buyer from the date of closing and paid into escrow. The
     balance of $2,745,000.00 shall accrue at 5% annual interest with accrued interest due on

4    December 31st of each year, the first interest payment of accrued interest shall be due
     on December 31, 2024. Flathead Premiere Title shall be the Escrow Agent for Closing and

5    administration of the Contract for Deed. The term of the Contract for Deed shall be 5
     Years from the date of closing. On the anniversary of the 5th year of closing all

6    remaining principal and accrued interest shall be due in full. There will be no
     prepayment penalty for early payments"; If the Contract for Deed is paid in full by the

7    anniversary of the third year from closing, the sellers agree to credit buyers with 25%
     of the paid and accrued interest towards the remaining principal balance of the Contract
     for Deed;

8        11.    The Agreement provided that the Closing Date for the transaction would be

9    June 28, 2024.

10       12.    The Agreement was subject to the following contingencies: an inspection

11   contingency that unless VAH gave notice of disapproval expired on June 7, 2024; a title

12   contingency that would be released seven days after receipt of the Title Commitment by

13   VAH; and an insurance contingency that was released on May 10, 2024.

14       13.    On or about March 19, 2024, John Busic ("Busic"), VAH's real estate agent,

15   contacted Gary Kaufmann ("Kaufmann"), Mule Shoe's real estate agent, and requested to

16   inspect the cabin located on the Property.

17       14.    On or about March 21, 2024, Kaufmann advised Busic that he was out of state

18   and was unavailable to provide access to the cabin until the third week in April.

19       15.    On or about April 19, 2024, Busic contacted Kaufmann again requesting

20   access to inspect the cabin and was advised that Kaufmann was still out of state.  Busic

21   advised Kaufmann that they needed access to the Property on May 9, 2024 because thay had

22   arranged for a property inspection to be completed.

23

24

16.     During the April 19, 2024 conversation, Busic inquired of Kaufmann as to whether it was possible to move up the closing to June 3, 2024 so that VAH could maximize its business during the busy wedding and food truck season.  Subsequently an addendum to the Buy-Sell Agreement moving up the closing date was executed by the parties.

17.     On or about May 2, 2024, Kaufmann disclosed for the first time that the cabin had not previously been connected to the septic system.  This fact had not been previously disclosed on the Owner's Property Disclosure Statement.

18.     On or about May 6, 2024, Kaufmann returned to Montana and granted access to the cabin, approximately two months after the buy-sell had been entered into.

19.     On or about May 22, 2024, Kaufmann contacted Busic and advised that the principals of Mule Shoe had a family emergency requiring them to travel to Missouri putting the June 3, 2024 closing date in jeopardy.

20.     VAH and Mule Shoe then agreed to move the closing date for the transaction back to the original date of June 28, 2024 to accommodate Mule Shoe's needs.

21.     In anticipation of closing and in reliance on Mule Shoe's representations, VAH entered into vendor agreements, purchased restaurant equipment, acquired a Montana liquor license, incurred marketing expenses, and hired employees to operate the businesses spending more than $420,000.00 to operate the businesses associated with the Property.

22.     At the instruction of Mule Shoe, VAH had the utilities for the Property transferred from its account as the responsible party and is currently paying for the utility expenses.

23.     Mule Shoe was aware of the VAH's plan to begin immediate operations of business upon closing.

24.     On or about June 20, 2024, legal counsel for Mule Shoe contacted legal counsel for VAH and requested that Mule Shoe be allowed a "post close occupancy" period of three weeks to allow Mule Shoe's principals additional time to move.

25.     On or about June 24, 2024, counsel for VAH that instead of a "post close occupancy period" that the closing date be moved to July 17, 2024.

26.     On or about June 28, 2024, VAH and Mule Shoe entered into an Amendment to Buy-Sell Agreement ("Amendment").  The Amendment extended the closing date of the transaction to on or before July 17, 2024, and made the $35,000.00 earnest money deposit non-refundable as of June 28, 2024.  A true and correct copy of the Amendment is attached as Exhibit 2.

27.     On or about July 16, 2024, VAH and Mule Shoe were notified by the Escrow Officer at Flathead Premier Title that she had all necessary funds in escrow and all of the attorney provided documents had been signed by the parties, including but not limited to the Contract for Deed, and that the transaction was ready to be recorded on July 17, 2024.  A true and correct copy of the executed documents are attached as Exhibits 3-6.

28.     On or about July 17, 2024, representative of VAH met with representative of Mule Shoe at the Property.  During this meeting, Mule Shoe turned over the keys to the property and title to the food truck and trailer.

29.     After VAH's onsite meeting with Mule Shoe on July 17, 2024, VAH was contacted by the escrow officer and advised that Mule Shoe was requesting proof of insurance for the Property.

30.     VAH's broker had been diligently working to obtain liability as well as property insurance.  Once this process began it was discovered by VAH that Property had a

1   fire insurance rating above 90 due to the high potential fire danger and that only specialty

2   insurers would issue property coverage.  Mule Shoe had not previously disclosed the

3   Property's fire rating to VAH.

4        31.    VAH advised Mule Shoe and its representatives that insurance applications

5   had been submitted and that insurance would be in place policy effective date of July 17,

6   2024.  Additionally, VAH provided Mule Shoe with the contact information for their

7   insurance broker.

8        32.    Upon information and belief, VAH's insurance broker attempted to contact

9   representatives of Mule Shoe on July 17, 2024, but were unable to make direct contact.

10       33.    On or about July 17, 2024, Mule Shoe instructed the escrow agent to not close

11  the transaction.

12       34.    On or about July 17, 2024, Mule Shoe contacted VAH and advised that it was

13  terminating the Agreement due to VAH's purported failure to obtain proof of insurance.

14       35.    The executed Contract for Deed provides that VAH has thirty days for any

15  non-monetary default, after delivery of a written notice specifying the nature of such default

16  to cure.  Exhibit 4.

17       36.    On or about July 19, 2024, Mule Shoe relisted the Property for sale.

18       37.    On or about July 23, 2024, VAH provided Mule Shoe a certificate of liability

19  insurance with an effective date of July 17, 2024.

20       38.    On or about August 5, 2024, VAH provided notice to Mule Shoe a certificate

21  of property insurance with an effective date of August 2, 2024.

22       39.    Pursuant to the terms of the Agreement specific performance is an allowed for

23  remedy for breach of the Agreement.

24

1      40.     VAH remains ready to close the transaction.

2      41.     As a result of Mule Shoe's actions, VAH has been unable to operate during

3    the 2024 summer season resulting in loss of income.

4                          **Count 1 – Breach of Contract**

5      42.     VAH incorporates by reference the allegations contained in paragraph 1

6    through 41 of the First Amended Complaint as if fully restated herein.

7      43.     VAH performed all material obligations under pursuant to the terms of the

8    Agreement.

9      44.     In the alternative, VAH is entitled to cure the failure to provide proof of

10   insurance to Mule Shoe of the within 30 days of written notice of the breach from Mule Shoe

11   pursuant to the Contract for Deed.

12     45.     Mule Shoe breached its Agreement with VAH by failing to close the real

13   estate transaction on July 17, 2024.

14     46.     As a result of Mule Shoe's breach of the Agreement, VAH has been damaged

15   and will continue to incur damages and hereby request that Mule Shoe be ordered

16   specifically perform its obligations to close the transaction and deliver all agreed to

17   conveyance document as provided for in the Agreement and that Mule Shoe be ordered to

18   take any and all actions required to complete performance of the Agreement.

19     47.     VAH is entitled to recover its reasonable attorney's fees and costs pursuant to

20   the terms of the Agreement.

21                          **Count II – Breach of Contract**
22                  **(Implied Covenant of Good Faith and Fair Dealing)**

23     48.     VAH incorporates by reference the allegations contained in paragraph 1

24   through 47 of the First Amended Complaint as if fully restated herein.

49.     Mule Shoe's actions are such that they amount to a breach of implied covenant of good faith and fair dealing.

50.     As a result of Mule Shoe's breach of this covenant, VAH has been damaged and will continue to be damaged, the amount of which may be difficult to calculate, therefore requests that the Court order Mule Shoe to specifically perform its obligations under the Agreement and that VAH be awarded its reasonable attorney's fees and costs.

<u>**Count III – Tortious Interference with Business Relations and**</u>
<u>**Prospective Economic Advantage**</u>

51.     VAH incorporates by reference the allegations contained in paragraph 1 through 50 of the First Amended Complaint as if fully restated herein.

52.     Mule Shoe's intentional refusal to close the transaction was without right or justifiable cause.

53.     Mule Shoe's refusal to close the transaction asserting property insurance was not in place was simply pretext for the fact that Mule Shoe no longer wanted to engage in seller financing for the transaction.

54.     Mules Shoe's actions were done for the purpose of causing damage and economic loss to VAH and to avoid seller financing of the transaction.

55.     As a result of Mule Shoe's actions, VAH has suffered damages.

WHEREFORE, Plaintiff Value Added Holdings III, LLC prays for the following relief:

1.     For judgment to be entered in favor of Plaintiff and against Defendant;

2.     For Defendant to be ordered to specifically perform its obligations under the Buy-Sell Agreement and amendments thereto;

3.     That Plaintiff be awarded monetary damages proven at trial;

4.      That Plaintiff be awarded its reasonable attorney's fees and costs; and

5.      For such other and further relief as may be justified by the circumstances.

Dated this 15th day of August 2024.

CROWLEY FLECK PLLP


By /s/ Kimberly S. More_____
    KIMBERLY S. MORE
    SELENA Z. SAUER
    Attorneys for Plaintiff

Authenticity Verified - 46df148d4eb6-492a-bef2-1627a0b714d0
DigiSign Verified - 46df148d4eb6-492a-bef2-1627a0b714d0

# BUY-SELL AGREEMENT (Commercial)
### (Including Earnest Money Receipt)

 

**This Agreement stipulates the terms of sale of this property. Read carefully before signing. This is a legally binding contract. If not understood, seek competent advice.**

1  Date:**March 7, 2024**
2
3  as  ☐ joint  tenants  with  rights  of  survivorship,  ☐ tenants  in  common,  ☐ individually,  ☒ other
4  **Value Added Holdings III, LLC**  (hereafter the "Buyer") agrees to purchase, and the Seller agrees to sell the
5  following described real property (hereafter the "Property") commonly known as
6  **12135 HWY 2 E**
7  in the City of _____**West Glacier**_____ , County of _____**Flathead**_____ , Montana, legally described as:
8
9  **S02, T31 N, R19 W, ACRES 6.32, COS 20952-A, TR 4 IN L 4**
10
11
12  TOGETHER with all interest of Seller in vacated streets and alleys adjacent thereto, all easements and other
13  appurtenances thereto, and all improvements thereon. All existing permanently installed fixtures and equipment that are
14  attached to the property are included in the purchase price and transfer to the Buyer. Certain fixtures and fittings are
15  included in the purchase price and transfer to the Buyer regardless of whether they are in fact permanently installed and
16  attached to the Property are electrical, plumbing and heating fixtures, and Seller owned water softeners/conditioners and
17  propane tanks, unless otherwise excluded below: _____
18  _____
19
20  **PERSONAL PROPERTY:** The following items of personal property and other assets are set forth hereafter or per
21  attached addendum, free of liens and without warranty of condition, are included and shall transfer to the Buyer at
22  Closing: _____
23  _____
24
25  Buyer acknowledges that only the personal property set forth above is to transfer to the Buyer at Closing regardless of
26  any other advertisements or information to the contrary.
27
28  **PURCHASE PRICE AND TERMS:**         **Three Million, Four Hundred Ninety-Five**
29  $_____**3,495,000.00** Purchase Price:_____**Thousand**_____ (U.S. Dollars)
30  $_____**35,000.00** Earnest Money (credited to Buyer at closing)
31  $_____**3,460,000.00** Balance Due (not including closing costs, prepaids and prorations) payable as follows
32                       (check one):
33                       ☐ All cash at closing (no financing contingency);
34                         Certification  of  cash  funds  provided  ☒ with  offer  **OR**  ☐ delivered  by  Buyer  within
35                         _____ days of the date all parties have signed this Agreement.
36                       ☒ Additional cash down payment at closing in the minimum amount of:
37                         ☒ $**715,000.00**_____  **OR** ☐ _____ % of the Purchase Price.
38                         Balance to be financed as indicated below:
39                         **Seller issued "Contract for Deed" to be prepared by sellers attorney**
40                         **for "Notice of Purchasers Interest". To be recorded and serviced at**
41                         **closing with Flathead Premier Title as the escrow agent. TERM:5 year**
42                         **Balloon, 5% APR, Interest Only, No Prepayment Penalty. If balloon**
43                         **paid in full prior to end of year 3, 50% of interest paid to date,**
44                         **shall be credited towards balance owed. Interest payments due yearly**
45                         **by 12/31 with 2024 being prorated.**
46                         _____
47
48                         Pre-approval letter from financial institution provided ☐ with offer **OR** ☐ delivered by Buyer
49                         within _____ days of the date all parties have signed this Agreement.

_____ /
**DB**
**Buyer's Initials**
John A. Busic

EXHIBIT
**1**

_____ / _____
**PD**   **VD**
**Seller's Initials**

50 **CLOSING DATE:** The date of closing shall be (date) _____June 28, 2024_____ (the "Closing Date"). The parties may, by
51 mutual agreement, close the transaction anticipated by this Agreement at any time prior to the date specified. The
52 Buyer and Seller will deposit with the closing agent all instruments and funds necessary to complete the purchase
53 in accordance with this Agreement. If third party financing is required by the terms of this Agreement (including
54 assumptions, contracts for deed, and lender financing), the Closing Date may be extended without amendment by not
55 more than _____7_____ days to accommodate delays attributable solely to such third party financing. If the Closing Date,
56 or any extension of the Closing Date, falls on a Saturday, Sunday or Montana or federal holiday, it shall automatically
57 be extended to the first day immediately following that is not a Saturday, Sunday or Montana or federal holiday.
58
59 **POSSESSION:** Seller shall deliver to Buyer possession of the Property and allow occupancy:
60 ☐ when the closing agent is in receipt of all required, signed documents and all funds necessary for the purchase; **OR**
61 ☐ upon recording of the deed or notice of purchaser's interest, **OR**
62 ☒ **Close of Escrow**
63 Seller shall provide keys and/or means to operate locks, mailboxes, security systems, alarms, if applicable.
64
65 **EARNEST MONEY:** *(check one)*
66 ☐ Broker/Salesperson acknowledges actual receipt of earnest money in the amount as set forth herein as evidenced
67 by check, cash or wire transfer.
68
69 Broker/Salesperson: _____ _____
70 *(name printed)*                    *(signature acknowledging receipt of earnest money)*
71
72 **OR**
73
74 ☒ Buyer agrees to provide earnest money in the amount as set forth herein within __5__ days, by 5:00 p.m. (Mountain
75 Time), of the date all parties have signed this Agreement. If the date the earnest money is due falls on a Saturday,
76 Sunday or Montana federal holiday, it shall be paid on the first day immediately following the due date that is not a
77 Saturday, Sunday or Montana or federal holiday.
78
79 Earnest money may be made by check, cash or wire transfer and shall be held in trust by **Flathead Premier**
80 **Title Company** _____ . If Buyer fails to provide earnest money as set forth herein,
81 buyer will be in default and Seller may declare this Agreement terminated and any earnest money already paid forfeited.
82 The parties agree that accrued interest, if any, shall be payable to the holder of the funds and that sums so paid are
83 consideration for services rendered.
84
85 **BUYER'S REPRESENTATION OF FUNDS:** Buyer represents that they have sufficient funds for the down payment
86 and closing costs to close this sale in accordance with this Agreement and are not relying upon any contingent source
87 of such funds unless otherwise expressly set forth herein.
88
89 **DETECTION DEVICES:** The Property is equipped with the following detection devices:
90 ☐ Smoke detector(s)
91 ☐ Carbon monoxide detector(s)
92 ☐ Other fire detection device(s): _____
93 _____
94
95 **PROPERTY INSPECTIONS:** The Buyer is aware that any Brokerage Firm(s) and Brokers/Salespersons involved in this
96 transaction have not conducted an expert inspection or analysis of the Property or its condition and make no
97 representations to the Buyer as to its condition, do not assure that the Property and/or buildings will be satisfactory to
98 the Buyer in all respects, that all equipment will operate properly or that the Property and/or improvements comply with
99 current building and zoning codes and ARE NOT building inspectors, building contractors, structural engineers,
100 electricians, plumbers, sanitarians, septic or cesspool experts, well drillers or well experts, land surveyors, civil
101 engineers, flood plain or water drainage experts, roofing contractors or roofing experts, accountants, attorneys, or title
102 examiners, or experts in identifying hazardous waste and/or toxic materials.


_DB_ / _____
Buyer's Initials


_PD_ / _VD_
Seller's Initials
12135 HWY 2 E,

Authenticated DigiSign Verified - 46df148d-4eb6-492a-bef2-1627a0b714d0

103 **CONTINGENCIES:** The contingencies set forth in this Agreement or on attached addenda shall be deemed to have
104 been released, waived, or satisfied, and the Agreement shall continue to closing, unless, by 5:00 p.m. (Mountain Time)
105 on the date specified for each contingency, the party requesting that contingency has notified the other party or the
106 other party's Broker/Salesperson in writing that the contingency is not released, waived, or satisfied. If a party has
107 notified the other party on or before the release date that a contingency is not released, waived, or satisfied, this
108 Agreement is terminated, and the earnest money will be returned to the Buyer, unless the parties negotiate other terms
109 or provisions.
110
111 **INSPECTION CONTINGENCY:**
112 ☒ This Agreement is contingent upon Buyer's acceptance of any Property conditions that Buyer deems appropriate,
113 including but not limited to any inspections or advice listed below. Buyer agrees to acquire, at their own cost,
114 independent inspections or advice from qualified inspectors or advisors of the Buyer's choice. Buyer agrees that
115 any investigations or inspections undertaken by Buyer or on his/her behalf shall not damage or destroy the Property,
116 without the prior written consent of Seller. Seller agrees to provide Buyer and Buyer's agents, inspectors and advisors
117 reasonable access to the Property to conduct any inspections desired by Buyer. Further, Buyer agrees return the
118 Property to its original condition and to indemnify Seller from any damage or destruction to the Property caused by
119 the Buyer's investigations or inspections, if Buyer does not purchase the property.
120

| | |
|---|---|
| 121 Building Inspection | Zoning Determination |
| 122 Owner's Property Disclosure Statement | Review and Approval of Protective Covenants |
| 123 Roof Inspection | Easements |
| 124 Structural/Foundation Inspection | Flood Plain Determination |
| 125 Electrical Inspection | Water Sample Test |
| 126 Plumbing Inspection | Septic or Cesspool Inspection |
| 127 Heating, ventilation, cooling system - Inspection | Pest/Rodent Inspection |
| 128 Radon | Underground Storage Tanks |
| 129 Asbestos | Sanitary Approval/Septic permit |
| 130 Well Inspection for condition of Well and Quantity of Water | Legal Advice |
| 131 Accounting Advice | Access to Property |
| 132 Survey or Corner Pins located | Airport Affected Area |
| 133 Water Rights | Road Maintenance |
| 134 Internet Availability/Speed | Toxic Waste/Hazardous Material |
| 135 Post-Closing Rental Obligations | Mold |
| 136 Inspection/Testing for Methamphetamine | |

137
138 Unless Buyer delivers written notice(s) of Buyer's disapproval of the Property conditions on or before
139 (Notice Date) _____ **June 7, 2024** _____ at 5:00 p.m. (Mountain Time), this inspection contingency shall be of
140 no further force or effect. **If Buyer disapproves** of the Property condition, Buyer shall deliver written notice to the
141 Seller or the Seller's Broker/Salesperson on or before the date specified above, together with a copy of ONLY that
142 portion of the inspection or report upon which the disapproval is based. Buyer shall also state whether Buyer elects
143 to immediately terminate the Agreement or negotiate a resolution of the conditions noted. **If Buyer elects to**
144 **negotiate** a resolution of the conditions noted, the notice must contain all of Buyer's objections and requested
145 remedies.
146
147 If the parties enter into a written agreement in satisfaction of the conditions noted, this contingency shall be of no
148 further force or effect. If the parties cannot come to written agreement in satisfaction of the conditions noted or if the
149 Buyer does not withdraw, in writing, his/her disapproval of the condition noted, on or before
150 (Resolution Date) _____ **June 14, 2024** _____ at 5:00 p.m. (Mountain Time), the earnest money shall be returned
151 to the Buyer, and the Agreement then terminated.
152
153 **FINANCING CONTINGENCY:**
154 ☐ This Agreement is contingent upon Buyer obtaining the financing specified in the section of this Agreement entitled
155 "PURCHASE PRICE AND TERMS". If financing cannot be obtained by the Closing Date this Agreement is
156 terminated and the earnest money will be refunded to the Buyer.

*DB*
_____ / _____
Buyer's Initials

© 2023 Montana Association of REALTORS®
Buy-Sell Agreement (Commercial), April 2023
Page 3 of 9

 

_____ / _____
Seller's Initials

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

12135 HWY 2 E,

157 **APPRAISAL CONTINGENCY:**
158 ☐ Property must appraise for at least ☐ the Purchase Price **OR** at least ☐ _____
159 If the Property does not appraise for at least the specified amount, this Agreement is terminated and earnest
160 money refunded to the Buyer unless the Buyer elects to proceed with closing this Agreement without regard to
161 appraised value. Written notice of Buyer's election to proceed shall be given to Seller or Seller's
162 Broker/Salesperson within _____ days of Buyer or Buyer's Broker/Salesperson receiving notice of appraised
163 value; **OR**
164 ☐ This Agreement is contingent upon the Property appraising for at least ☐ the Purchase Price **OR** at least
165 ☐ $ _____ . Release Date: _____ at 5:00 p.m. (Mountain Time).
166
167 **TITLE CONTINGENCY:** This Agreement is contingent upon Buyer's receipt and approval (to Buyer's satisfaction) of
168 the preliminary title commitment (the "Commitment") issued for the Property. However, Buyer may not object to the
169 standard pre-printed exceptions (general exceptions not unique to the Property). Release Date: ___7___ days from
170 the earlier of Buyer's or Buyer Broker's/Salesperson's receipt of the Commitment.
171
172 Buyer may approve the Commitment subject to the removal of specified exceptions. If Buyer provides Seller written
173 objections to the Commitment prior to the release date above, Seller shall have ten (10) days from receipt of those
174 objections to satisfy said objections or propose to Buyer a plan by which the objections would be satisfied within a time
175 frame satisfactory to Buyer. If within said ten (10) day period Seller has not either satisfied Buyer's objection to the
176 Commitment or proposed to Buyer a plan by which the objections would be satisfied, Buyer shall have three (3) days
177 after expiration of said ten (10) day period to notify Seller whether Buyer desires to (i) terminate this Agreement in which
178 case the earnest money shall be returned to the Buyer or (ii) waive said objections in which case this Agreement shall
179 remain in full force and effect. The two remedies stated above shall be Buyer's sole remedies if Seller and Buyer are
180 unable to resolve Buyer's objections to the Commitment.
181
182 Buyer shall have the right to examine any updated or revised Commitment at any time after the expiration of the Release
183 Date set forth above and to object to any new title exceptions created or suffered since the effective date of the original
184 Commitment. If Buyer notifies Seller of any such additional objections prior to the Closing Date, the parties shall have
185 the same rights set forth above and the Closing Date shall be automatically extended by the number of days equal to the
186 number of days set forth after the Release Date, above, plus thirteen (13).
187
188 **INSURANCE CONTINGENCY:** This Agreement is contingent upon Buyer's ability to acquire, at a rate acceptable to
189 the Buyer, hazard insurance on the Property. Release Date: _____May 10, 2024_____ at 5:00 p.m. (Mountain Time).
190
191 **This Agreement is contingent upon** _____
192 _____
193 _____ Release Date:_____ at 5:00 p.m. (Mountain Time).
194
195 **This Agreement is contingent upon** _____
196 _____
197 _____ Release Date:_____ at 5:00 p.m. (Mountain Time).
198
199 **ADDITIONAL PROVISIONS: 1.)**Gringo "food trailer" and all FFE to convey. To include rights
200 to menus, recipes, trade secrets, social media site/s, logo/s, website/s, vendor list
201 and any/all related intellectual property. 2.) Glacier View Weddings Venue tent and
202 associated assets to convey at close. I.E. website/s, logo/s, social media site/s,
203 vendor list, current bookings, and any/all  related intellectual property. 3.) Seller
204 agrees to execute a separate asset purchase agreement during escrow to facilitate both
205 Wandering Gringo and Glacier View Weddings business assets and ensure Buyer incurs no
206 business liabilities, tax liabilities, past, present and future for past operating
207 endeavors including full indemnification from both entities. 4.) Buyer needs to
208 understand and approved of lease obligations post close with concessions vendor.
209
210 **CONVEYANCE:** The Seller shall convey the real property by _____Warranty_____ deed, free of all liens
211 and encumbrances except those described in the title insurance commitment, as approved by Buyer. The Seller shall
212 further convey any and all security deposits, rental agreements, property condition reports and other documentation in
213 regard to any parts of the Property occupied by tenants.

DB / _____
Buyer's Initials
© 2023 Montana Association of REALTORS®
Buy-Sell Agreement (Commercial), April 2023
Page 4 of 9
PD / VD
Seller's Initials

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com
12135 HWY 2 E,

Authenticated with Authentication ID: 46df148d4eb6-492a-bef2-1627a0b714d0
DigiSign Verified -
Case 9:24-cv-00120-KLD    Document 8    Filed 09/23/24    Page 14 of 52

214 **WATER:** All water, including surface water or ground water, any legal entitlement to water, including statements of
215 claim, certificates of water rights, permits to appropriate water, exempt existing rights, decreed basins or any ditches,
216 ditch rights, or ditch easements appurtenant to and/or used in connection with the Property are included with the
217 Property, except _____
218 _____
219
220 Filing or transfer fees will be paid by ☐ Seller, ☐ Buyer, ☒ split equally between Buyer and Seller.
221 Documents for transfer will be prepared by _____
222 _____
223
224 **WATER RIGHT OWNERSHIP UPDATE DISCLOSURE:** By Montana law, failure of the parties at closing or transfer of
225 real property to pay the required fee to the Montana Department of Natural Resources and Conservation for updating
226 water right ownership may result in the transferee of the Property being subject to a penalty. Additionally, in the case of
227 water rights being exempted, severed, or divided, the failure of the parties to comply with
228 Section 85-2-424, MCA, could result in a penalty against the transferee and rejection of the deed for recording.
229
230 **NATURAL WATER BODIES AND LAND PRESERVATION DISCLOSURE:** Buyers of property in the State of Montana
231 should be aware that some properties contain or are adjacent to streams, rivers, wetlands, floodplains and other water
232 bodies. It is the general policy of the State of Montana that natural water bodies and the lands immediately adjacent to
233 them are to be protected and preserved to be available in their natural or existing state, and to prohibit unauthorized
234 projects related thereto. Property owners should consult their local soil conservation board, a land use professional, or
235 other qualified advisor, regarding any applicable local, state or federal regulations, including permitting or other
236 approvals, before working in or around any streams, rivers, wetlands, floodplains or other water bodies, including
237 vegetation removal.
238
239 **FLOOD PLAIN DISCLOSURE:** Property flooding can occur any time of year from both surface water as well as
240 groundwater (water rising up through the ground). Buyer's hazard insurance policy usually will NOT cover property
241 damage due to this type of flooding. If Property is determined to lie within a FEMA-designated 1% Flood Hazard Area
242 and the Buyer is obtaining a loan, Buyer's lender will likely require the purchase of flood insurance in connection with
243 Buyer's purchase of the Property. The Property could be impacted, learn more at FEMA.gov
244
245 **MINERAL RIGHTS:** "Mineral rights" as defined in this Agreement (which may be different than the definition under
246 Montana Law) is a term used to describe the rights the owner of those rights has to use, mine, and/or produce any or
247 all of the minerals and hydrocarbons including oil, gas, coal, sand, gravel, etc. lying below the surface of property. These
248 mineral rights may be separate from the rights a property owner has for the surface of a property. In some cases, these
249 mineral rights have been transferred to a party other than the property owner and as a result the subsurface mineral
250 rights have been severed from the property owner's surface rights. If the mineral rights have been severed from the
251 surface rights, the owner of the mineral rights has the right to enter the land and occupy it in order to mine the minerals
252 even though they don't own the property. The undersigned Buyer acknowledges and agrees that neither the Seller nor
253 the brokerage firms, brokers and salespersons involved in the transaction anticipated by this Agreement warrant or
254 make any representations concerning the mineral rights, if any, for this Property and that neither the Seller nor the
255 brokerage firms, brokers and salespersons involved in the Buyer's purchase of the Property have conducted an
256 inspection or analysis of the mineral rights to and for the Property.
257
258 **CLOSING FEE:** The fee charged by the individual or company closing the transaction will be paid by ☐ Seller ☐ Buyer
259 ☒ Equally Shared.
260
261 **TITLE INSURANCE:** Seller, at Seller's expense and from a title insurance company chosen by Seller, shall furnish
262 Buyer with an ALTA Standard Coverage Owners Title Insurance Policy (as evidenced by a standard form American
263 Land Title Association title insurance commitment) in an amount equal to the purchase price. Buyer may purchase
264 additional owner's title insurance coverage in the form of "Extended Coverage" or "Enhanced Coverage" for an
265 additional cost to the Buyer. It is recommended that Buyer obtain details from a title company.
266
267 **CONDITION OF TITLE:** All mortgages, judgments and liens shall be paid or satisfied by the Seller at or prior to closing
268 unless otherwise provided herein. Seller agrees that no additional encumbrances, restrictions, easements or other
269 adverse title conditions will be placed against the title to the Property subsequent to the effective date of the preliminary
270 title commitment approved by the Buyer.

DB /
Buyer's Initials

© 2023 Montana Association of REALTORS®
Buy-Sell Agreement (Commercial), April 2023
Page 5 of 9

PD / VD
Seller's Initials

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

12135 HWY 2 E,

DigiSign Verified: 46df148d-4eb6-492a-bef2-1627a0b714d0

271 **SECTION 1031 LIKE-KIND EXCHANGE:** If either Buyer or Seller intends for this transaction to be part of a Section
272 1031 like-kind exchange, then the other party shall cooperate in the completion of the like-kind exchange provided the
273 cooperating party does not incur any additional liability or cost in doing so. Any party who intends for this transaction to
274 be part of a Section 1031 like-kind exchange may assign their rights under this Agreement to a qualified intermediary
275 or any entity expressly created for the purposes of completing a Section 1031 like-kind exchange, notwithstanding the
276 prohibition against the Buyer's assignment of this Agreement set forth in the "Binding Effect and Non-Assignability"
277 section below.
278
279 **SPECIAL IMPROVEMENT DISTRICTS AND ASSOCIATION SPECIAL ASSESSMENTS:** All Special Improvement
280 Districts (including rural SIDs), and all special or non-recurring assessments of any non-governmental association,
281 including those that have been noticed to Seller by City/County but not yet spread or currently assessed or that have
282 been approved but not yet billed or assessed, will be assumed by Buyer at closing unless otherwise agreed.
283
284 **PRORATION OF TAXES AND ASSESSMENTS:** Seller and Buyer agree to prorate taxes, Special Improvement District
285 and association special assessments for the current tax year, as well as prepaid rents, water and sewer system charges,
286 heating fuel and tank rental, irrigation assessments, Homeowner's Association dues and/or common maintenance fees,
287 as of the date of closing unless otherwise agreed.
288
289 **CONDITION OF PROPERTY:** Seller agrees that the Property shall be in the same condition, normal wear and tear
290 excepted, from the date of the execution of this Agreement up to the time Buyer takes possession of the Property. Seller
291 agrees to leave the Property in broom clean or better condition, free and clear of Seller's personal property and
292 possessions, tenants, and occupants, except as otherwise agreed to in the Agreement. Seller also agrees to allow Buyer
293 a walk-through inspection of said Property prior to closing to confirm that all appurtenances and personal property included
294 in the sale remain on the Property and that there has been no significant change in the condition of the Property, except
295 for normal wear and tear and changes agreed upon by the parties.
296
297 **NOXIOUS WEEDS DISCLOSURE:** Buyers of property in the State of Montana should be aware that some properties
298 contain noxious weeds. The laws of the State of Montana require owners of property within this state to control, and to
299 the extent possible, eradicate noxious weeds. For information concerning noxious weeds and your obligations as an
300 owner of property, contact either your local County extension agent or Weed Control Board.
301
302 **MEGAN'S LAW DISCLOSURE:** Pursuant to the provisions of Title 46, Chapter 23, Part 5 of the Montana Code
303 Annotated, certain individuals are required to register their address with the local law enforcement agencies as part of
304 Montana's Sexual and Violent Offender Registration Act. In some communities, law enforcement offices will make the
305 information concerning registered offenders available to the public. If you desire further information please contact the
306 local County Sheriff's Office, the Montana Department of Justice, in Helena, Montana, and/or the probation officers
307 assigned to the area.
308
309 **RADON DISCLOSURE STATEMENT:** The following disclosure is given pursuant to the Montana Radon Control Act,
310 Montana Code Annotated Section 75-3-606. RADON GAS: RADON IS A NATURALLY OCCURRING RADIOACTIVE
311 GAS THAT, WHEN IT HAS ACCUMULATED IN A BUILDING IN SUFFICIENT QUANTITIES, MAY PRESENT HEALTH
312 RISKS TO PERSONS WHO ARE EXPOSED TO IT OVER TIME. LEVELS OF RADON THAT EXCEED FEDERAL
313 GUIDELINES HAVE BEEN FOUND IN BUILDINGS IN MONTANA. ADDITIONAL INFORMATION REGARDING RADON
314 AND RADON TESTING MAY BE OBTAINED FROM YOUR COUNTY OR STATE PUBLIC HEALTH UNIT. If the Property
315 has been tested for radon, the Seller will provide a copy of the test results concurrent with an executed copy of this
316 Agreement. If the Property has received radon mitigation treatment, the Seller will provide the evidence of the mitigation
317 treatment concurrent with an executed copy of this Agreement.
318
319 **BUYER'S REMEDIES:** (A) If the Seller fails to accept the offer contained in this Agreement within the time period provided
320 in the BUYER'S COMMITMENT section, all earnest money shall be returned to the Buyer.
321 (B) If the Seller accepts the offer contained in this Agreement, but refuses or neglects to consummate the transaction
322 anticipated by this Agreement within the time period provided in this Agreement, the Buyer may:
323     (1) Demand immediate repayment of any earnest money paid by the Buyer and upon the return of such money,
324     the rights and duties of Buyer and Seller under this Agreement shall be terminated; **OR**
325     (2) Demand that Seller specifically perform Seller's obligation under this Agreement; **OR**
326     (3) Demand monetary damages from Seller for Seller's failure to perform the terms of this Agreement.


*DB* / _____
Buyer's Initials

© 2023 Montana Association of REALTORS®
Buy-Sell Agreement (Commercial), April 2023
Page 6 of 9


*PD* | *VD*
Seller's Initials

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

12135 HWY 2 E,

DigiSign Verified - 46df148d-4eb6-492a-bef2-1627a0b714d0

327 **SELLER'S REMEDIES:** If the Seller accepts the offer contained in this Agreement and Buyer refuses or neglects to
328 consummate the transaction anticipated by this Agreement within the time period provided in this Agreement or
329 otherwise defaults, the Seller may:

330 (1) Declare the earnest money paid by Buyer be forfeited whereupon the rights and duties of the Buyer and Seller
331 under this Agreement shall be terminated; **OR**

332 (2) Demand that Buyer specifically perform Buyer's duties and obligations under this Agreement; **OR**

333 (3) Demand that Buyer pay monetary damages for Buyer's failure to perform the terms of this Agreement.

334

335 **BUYER'S AND SELLER'S CERTIFICATION:** By entering into this Agreement, each person or persons executing this
336 Agreement, as Buyer or Seller, represents that he/she is eighteen (18) years of age or older, of sound mind, and legally
337 competent to own or transfer real property in the State of Montana; and, if acting on behalf of a corporation, partnership,
338 or other non-human entity, that he/she is duly authorized to enter into this Agreement on behalf of such entity.

339

340 **FOREIGN PERSON OR ENTITY:** Section 1445 of the Internal Revenue Code provides for the withholding of tax
341 upon the sale of U.S. real property owned by a foreign entity or foreign person unless the amount realized (usually
342 the sales price) does not exceed $300,000 and the Buyer intends to use the Property as a residence. If the Seller is
343 a foreign entity or foreign person, Seller acknowledges and agrees that the Buyer or closing agent is required to
344 deduct and withhold the applicable tax from the proceeds of sale at closing and submit the tax to the Internal Revenue
345 Service unless the transfer of the Property satisfies an exception provided for in Section 1445 of the Internal Revenue
346 Code.

347

348 **CONSENT TO DISCLOSE INFORMATION:** Buyer and Seller hereby consent to the procurement and disclosure by
349 Buyer, Seller, and Brokers/Salespersons and their attorneys, agent, and other parties having interests essential to this
350 Agreement, of any and all information reasonably necessary to consummate the transaction described in this
351 Agreement, specifically including access to escrows for review of contracts, deeds, trust indentures, or similar
352 documents concerning this Property or underlying obligations pertaining thereto.

353

354 **WIRE FRAUD ALERT:** Criminals are hacking email accounts of title companies, real estate agents, settlement
355 attorneys and others, resulting in fraudulent wire instructions being used to divert funds to the account of the criminal.
356 The emails may look legitimate but they are not. Buyer and Seller are advised **NOT** to wire any funds without personally
357 speaking with the intended recipient of the wire to confirm the routing number and the account number. Buyer and Seller
358 should **NOT** send personal information such as social security numbers, bank account numbers and credit card numbers
359 through email.

360

361 **ACCURACY OF THIRD-PARTY INFORMATION:** Buyer is encouraged to do Buyer's own research and due diligence
362 concerning the Property and to not rely solely on information contained in any advertisements, descriptions, photos, or
363 information provided by a Multiple Listing Service. Buyer acknowledges and agrees that any information prepared by
364 third parties with respect to the Property and provided to the Buyers was obtained from a variety of sources and that
365 neither Seller nor any Brokers/Salesperson representing Seller or Buyer have made any independent investigation or
366 verification of such information. Buyer further acknowledges that while such information provided to Buyer is believed
367 to be from sources deemed reliable, some sources may have conflicting or incorrect information.

368

369 **RISK OF LOSS:** All loss or damage to any of the above-described Property or personal property from any cause is
370 assumed by Seller through the time of closing unless otherwise specified.

371

372 **TIME IS OF THE ESSENCE:** Time is of the essence as to the terms and provisions of this Agreement.

373

374 **BINDING EFFECT AND NON-ASSIGNABILITY:** This Agreement is binding upon the heirs, successors and assigns of
375 each of the parties hereto; however, unless otherwise provided for in this Agreement, Buyer's interest is not assignable
376 without the Seller's express written consent.

377

378 **ATTORNEY FEES:** In any action brought by the Buyer or the Seller to enforce any of the terms of this Agreement, the
379 prevailing party in such action shall be entitled to such reasonable attorney fees as the court or arbitrator shall determine
380 just.

381

382 **COMMISSION:** The Seller's and/or Buyer's commitment to pay a commission in connection with this transaction is an
383 integral part of this Agreement.

_DB_ / _____
Buyer's Initials

© 2023 Montana Association of REALTORS®
Buy-Sell Agreement (Commercial), April 2023
Page 7 of 9

_PD_ / _VD_
Seller's Initials

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

12135 HWY 2 E,

Authentisign ID: 46df148d-4eb6-492a-bef2-1627a0b714d0
DigiSign Verified - E46df148d-4eb6-492a-bef2-1627a0b714d0

384  **FAX/COUNTERPARTS/ELECTRONIC SIGNATURES:** This Agreement may be executed in counterparts and, when
385  all counterpart documents are executed, the counterparts shall constitute a single binding instrument. Moreover, a
386  signature transmitted by fax or other electronic means will be enforceable against any party who executes the
387  Agreement and transmits the signature by fax or other electronic means. The parties hereto, all agree that the
388  transaction contemplated by this document may be conducted by electronic means in accordance with the Montana
389  Uniform Electronic Transaction Act.
390
391  **ENTIRE AGREEMENT:** This Agreement, together with any attached exhibits and any addenda or amendments signed
392  by the parties, shall constitute the entire agreement between Seller and Buyer, and supersedes any other written or oral
393  agreements between Seller and Buyer. This Agreement can be modified only in writing, signed by the Seller and Buyer.
394
395  **EARNEST MONEY DISPUTES:** Buyer and Seller agree that, in the event of any controversy regarding the earnest money
396  and things of value held by the Broker, closing agent, or any person or entity holding such money or property, unless mutual
397  written instructions are received by the holder of the earnest money and things of value, Broker or closing agent shall not be
398  required to take any action, but may await any proceedings, or, at Broker's or closing agent's option and sole discretion, may
399  interplead all parties and deposit any monies or things of value in a court of competent jurisdiction and may utilize as much of
400  the earnest money deposit as may be necessary to advance the cost and fees required for filing such action.
401
402  **ADDENDA AND/OR DISCLOSURES ATTACHED:** (check all that apply):
403     ☐ Contingency for Sale of Buyer's Property            ☐ Back-up Offer
404     ☐ Addendum for Additional Provisions                   ☒ Mold Disclosure (for all inhabitable real property)
405     ☒ Water Rights Acknowledgement
406     ☒ <u>Owners Property Disclosure Statement</u>
407     ☒ <u>To be provided within five (5) days of accepted buy/sell contract.</u>
408     ☐ _____
409
410  **RELATIONSHIP CONFIRMATION:** The parties to this Agreement confirm that the real estate licensees identified
411  hereafter have been involved in the capacities indicated below and the parties have previously received the required
412  statutory disclosures setting forth the licensee's duties and the limits of their obligations to each party:
413
414  <u>Gary J. Kauffman</u>                              of <u>Rocky Mountain Habitats Real Estate</u>
415  (name of licensee)                                    (name of brokerage company)
416  is acting as  ☒ Seller's Agent        ☐ Dual Agent       ☐ Statutory Broker
417
418
419  <u>John A. Busic</u>                                  of <u>eXp Realty LLC</u>
420  (name of licensee)                                    (name of brokerage company)
421  is acting as  ☒ Buyer's Agent        ☐ Dual Agent       ☐ Statutory Broker
422                ☐ Seller's Agent (includes Seller's Sub-Agent)
423
424  **BUYER'S ACKNOWLEDGMENT:** Buyer acknowledges that prior verbal representations by the Seller or Seller's
425  representatives do not modify or affect this Agreement. Buyer acknowledges that by signing this Agreement he/she has
426  examined the subject real and personal property and represents that Buyer ☒ has **OR** ☐ has not physically visited the
427  Property in person prior to the execution of this Agreement; has entered into this Agreement in full reliance upon his/her
428  independent investigation and judgments and has read and understood this entire Agreement.

*DB* / _____
Buyer's Initials

© 2023 Montana Association of REALTORS®
Buy-Sell Agreement (Commercial), April 2023
Page 8 of 9

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com


*PD* , *VD*
Seller's Initials

12135 HWY 2 E,

429  **BUYER'S COMMITMENT:** I/We agree to purchase the above-described Property on the terms and conditions set forth
430  in the above offer and grant to said Broker/Salesperson until (date) _____**03/11/2024**_____ , at _____**5**_____ ☐ am ☒ pm
431  (Mountain Time) to secure Seller's written acceptance, whether or not that deadline falls on a Saturday, Sunday or
432  holiday. Buyer may withdraw this offer at any time prior to Buyer being notified of Seller's written acceptance. If Seller
433  has not accepted by the time specified, this offer is automatically withdrawn. I/We hereby acknowledge receipt of a copy
434  of this Agreement bearing my/our signature(s).

435  *Dustin Bradford*                                              03/08/2024, 01:40:55 PM MST
436  _____ Date: _____ , at _____ ☐ am ☐ pm (Mountain Time)
437  Buyer's Signature
438
439  Name Printed:  **Dustin  Bradford** _____
440
441  Address: **2617 N 82nd Street**                    **Mesa**              State: **AZ**   Zip: **85207** _____
442
443  _____ Date: _____ , at _____ ☐ am ☐ pm (Mountain Time)
444  Buyer's Signature
445
446  Name Printed: _____
447
448  Address *(if different)*: _____ State: _____ Zip: _____
449

450  **SELLER'S COMMITMENT:**
451  I/We agree to sell to Buyer the above-described Property on the terms and conditions herein above stated. I/We hereby
452  acknowledge receipt of a copy of this Agreement bearing my/our signature(s) and that of the Buyer(s) named above.
453
454  _____ Date: _____ , at _____ ☐ am ☐ pm (Mountain Time)
455  Seller's Signature
456
457  Name Printed: _____
458
459  Address: _____ State: _____ Zip: _____
460
461  _____ Date: _____ , at _____ ☐ am ☐ pm (Mountain Time)
462  Seller's Signature
463
464  Name Printed: _____
465
466  Address *(if different)*: _____ State: _____ Zip: _____
467
468  ☒ Modified per the attached Counter Offer:
469
470  ___*PD*___ / ___03/12/24___           ___*VD*___ / ___03/12/24___
471  Seller's Initials      Date                  Seller's Initials      Date
472
473  ☐ Rejection of this offer by Seller (no counter offer is being made):
474
475  _____ / _____           _____ / _____
476  Seller's Initials      Date                  Seller's Initials      Date


**NOTE:** Unless otherwise expressly stated the term "days" means calendar days and not business days. Business days are defined as all days
except Sundays and Montana and federal holidays.

Authe DigiSign Verified - fed8e94a-08db-4cc7-862e-da966a0f07e8

# COUNTER OFFER



1 Date:**March 15, 2024**
2
3 This Counter Offer pertains to a Buy-Sell Agreement (hereafter the "Agreement") dated _____ **March 7, 2024** ,
4 by and between **Muleshoe Outfitters, LLC, Virginia Detoni** (hereafter the "Seller") and
5 _____ (hereafter the "Buyer") concerning
6 the property described as: **12135 US Highway 2E, West Glacier, MT  59936**
7
8
9
10 All the terms and conditions of the Agreement, except the Buyer's Commitment provision, are hereby incorporated by
11 reference except as modified by the following terms and conditions: **Owner Financing [lines 39-45] struck**
12 **in entirety and replace with the following:"Seller's attorney shall prepare Seller's**
13 **Financing Contract For Deed in accordance with standard terms and conditions, including**
14 **an executed Deed in Escrow, and a recorded Notice of Purchaser's Interest.Real estate**
15 **taxes shall be paid by the Buyer from the date of closing and paid into escrow. The**
16 **balance of $2,745,000.00 shall accrue at 5% annual interest with accrued interest due on**
17 **December 31st of each year, the first interest payment of accrued interest shall be due**
18 **on December 31, 2024. Flathead Premiere Title shall be the Escrow Agent for Closing and**
19 **administration of the Contract for Deed. The term of the Contract for Deed shall be 5**
20 **Years from the date of closing. On the anniversary of the 5th year of closing all**
21 **remaining principal and accrued interest shall be due in full. There will be no**
22 **prepayment penalty for early payments"; If the Contract for Deed is paid in full by the**
23 **anniversary of the third year from closing, the sellers agree to credit buyers with 25%**
24 **of the paid and accrued interest towards the remaining principal balance of the Contract**
25 **for Deed;**
26
27 **[Line 62] Shall be changed to Line 61.; Under Additional Provisions the following to be**
28 **added "Any Indemnification document required by Buyer's to be prepared by Buyer at**
29 **Buyer's expense. Said Indemnification to be acceptable to sellers." Starting on Line 207**
30 **the language, "4.) Buyer needs to understand and approved of lease obligations post close**
31 **with concessions vendor." shall be struck in its entirety.**
32
33 **This Counter Offer supercedes the Counter Offer dated March 12, 2024 and the Counter**
34 **Offer dated March 12, 2024 is Null and Void and withdrawn.**
35
36
37
38
39
40
41
42
43
44
45

_DB_ /
Buyer's Initials

PD  VD
Seller's Initials

© 2021 Montana Association of REALTORS®
Counter Offer, April 2021
Page 1 of 2

Gary J. Kauffman Real Estate, P.O. Box 583 West Glacier MT 59936        Phone: 4064713087        Fax: 6193302634        Mule Shoe Outfitters,
Gary Kauffman        Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

46 The performance dates contained in the Agreement:

47

48 ☑ Shall remain the same, except as otherwise stated herein; OR

49

50 ☐ Shall be extended the same number of days that have elapsed between the date of the Agreement and the date
51     of final acceptance of this Counter Offer except for the closing date which shall remain as set forth in the
52     Agreement.

53

54 Acceptance of this Counter Offer may be made by providing a signed copy to the offering party or their
55 Broker/Salesperson not later than _____ (Date/Time) at ☐ am ☐ pm (Mountain Time), whether or not
56 that deadline falls on a Saturday, Sunday or holiday. Offering party may withdraw this Counter Offer any time prior to
57 receiving written acceptance. If acceptance is not given to the offering party or their Broker/Salesperson by expiration of
58 the time for acceptance, this offer is then null and void.

59

60

61 *Dustin Bradford* _____ 03/16/2024    *Paul Detoni* _____ 03/15/2024

62 Buyer's Signature                Date            Seller's Signature                        Date
63                                                 **Muleshoe Outfitters, LLC**

64

65 _____ _____    *Virginia Detoni* _____ 03/15/2024

66 Buyer's Signature                Date            Seller's Signature                        Date
                                                  **Virginia Detoni**

**NOTE:** Unless otherwise expressly stated the term "days" means calendar days and not business days. Business days are defined
as all days except Sundays and Montana or federal holidays.

## AMENDMENT TO BUY-SELL AGREEMENT

THIS AMENDMENT TO BUY-SELL AGREEMENT ("**Amendment**"), dated June __, 2024 ("**Effective Date**"), is between MULE SHOE OUTFITTERS, LLC, a Montana limited liability company ("**Seller**"), and VALUE ADDED HOLDINGS III, LLC, an Arizona limited liability company qualified to do business in Montana ("**Purchaser**").

A.　　Seller and Purchaser are parties to that certain Buy-Sell Agreement (Commercial) dated March 7, 2024, which was amended by a Counter Offer dated March 15, 2024 (as amended, the "**Purchase Agreement**"), wherein Seller has agreed to sell and Purchaser has agreed to purchase, certain personal property and real property located in the City of West Glacier, Flathead County, Montana, as more particularly described in the Purchase Agreement.

B.　　The parties have agreed to amend the Purchase Agreement according to the terms and conditions set forth in this Amendment.

NOW, THEREFORE, for good and valuable consideration, Seller and Purchaser agree as follows:

1.　　**Definitions; Amendment**.  Unless otherwise indicated herein, all terms used in this Amendment have the definitions assigned to them in the Purchase Agreement.  This Amendment constitutes an amendment to the Purchase Agreement.  In the event of any conflict or inconsistency between the terms of this Amendment and the terms of the Purchase Agreement, the terms of this Amendment control.

2.　　**Extension of Closing Date**.  The Closing Date is extended to on or before July 17, 2024.

3.　　**Earnest Money Deposit**.  The Earnest Money deposit of $35,000 is non-refundable as of the Effective Date, except upon a default by Seller.

4.　　**Additional Amendments**.

(a)　　On or before July 5, 2024, the parties specified shall deliver to Flathead Premier Title Company ("**Escrow Agent**") the following fully executed and acknowledged, as required, agreements and instruments dated as of the Closing Date ("**Closing Deliveries**"):

(i)　　Contract for Deed executed by Purchaser and Seller;

(ii)　　 Abstract of Contract for Deed and Notice of Purchaser's Interest executed by Purchaser and Seller;

(iii)　　Warranty Deed executed by Seller, as Grantor;

(iv)　　Quit Claim Deed executed by Purchaser, as Grantor;

(v)　　Estoppel Affidavit executed by Purchaser, as Grantor; and

1

(vi)     Promissory Note in the principal amount of $2,745,000 executed by Purchaser, as Borrower, in favor of Seller, as Lender.

(vii)     Bill of Sale conveying the personal property.

(b)     On or before July 5, 2024, Purchaser shall deposit with the Escrow Agent the additional cash down payment in the amount of $715,000.

(c)     If any of the Closing Deliveries or the cash down payment are not delivered by Purchaser to the Escrow Agent on or before July 5, 2024, then the Agreement as amended by this Amendment will terminate automatically and without the requirement of notice or any other action by the parties and the Escrow Agent shall disburse the Earnest Money Deposit to Seller without the need for any further authorization.

5.     **Operation of Business; Vacating Property**.  Seller agrees to continue to operate its business on the Property in the ordinary course from the Effective Date through the Date of Closing.  Seller shall vacate the Property on or before the Date of Closing and will give notice to Purchaser when Seller has vacated the Property. Purchaser may conduct a walk-through inspection of the Property to confirm that Seller has removed its personal property from the Property.

6.     **Authority**.  The execution, delivery, and performance of this Amendment has been duly authorized by all necessary action of the parties, and when duly executed and delivered, will be a legal, valid and binding obligation, enforceable in accordance with its terms.

7.     **Ratification**.  Except as set forth herein, all of the terms and conditions contained in the Purchase Agreement will remain the same and in full force and effect, and the parties ratify and reaffirm the Purchase Agreement.

8.     **Counterparts**.  This Amendment may be executed in multiple counterparts, each of which will be deemed an original and all of which when taken together, shall constitute a whole. It will be fully executed when each party whose signature is required has signed at least one counterpart notwithstanding that all parties have not executed the same counterpart.  The parties agree that signatures transmitted by facsimile or electronic mail will be binding as if they were original signatures.

(Signatures are on the next page)

DATED as of the Effective Date.

MULE SHOE OUTFITTERS, LLC

By: _____
Name: Virginia Detoni
Its: Member

By: _____
Name: Paul Detoni
Its: Member

VALUE ADDED HOLDINGS III, LLC

By: _____
Name: Dustin Bradford
Its: Manager

3

4874-8018-2220.v4

| American Land Title Association | ALTA Settlement Statement - Borrower/Buyer |
|---|---|
| | Adopted 05-01-2015 |

| | |
|---|---|
| File No./Escrow No.: 6617FPT | Flathead Premier Title Company, LLC |
| Print Date & Time: 07/16/24 3:41 PM | ALTA Universal ID: 1177728 |
| Officer/Escrow Officer: Samantha Vondrich | 53 4th Avenue East North |
| Settlement Location: | Kalispell, MT  59901 |
| Flathead Premier Title - Kalispell Branch | |
| 53 4th Avenue East North | |
| Kalispell, MT 59901 | |

| | |
|---|---|
| Property Address: | 02,31,19, County of Flathead, State of Montana. |
| | 12135 Highway 2 E |
| | West Glacier, MT  59936 |
| Borrower: | Value Added Holdings III, LLC |
| | 2617 N 82nd Street |
| | Mesa, AZ  85207 |
| Seller: | Mule Shoe Outfitters, LLC, a Montana limited liability company |
| | PO Box 322 |
| | West Glacier, MT  59936 |
| Lender: | Mule ShoeOutfitters, LLC |
| Loan Number: | |
| Settlement Date: | 07/17/2024 |
| Disbursement Date: | |
| Additional dates per state requirements: | |

| Description | Borrower/Buyer | |
|---|---|---|
| | Debit | Credit |
| Financial | | |
| Sale Price of Property | $3,495,000.00 | |
| Deposit | | $35,000.00 |
| Loan Amount | | $2,745,000.00 |
| | | |
| Prorations/Adjustments | | |
| Funds Received | | $715,000.00 |
| County property taxes from 01/01/2024 thru 07/17/2024 | | $1,702.54 |
| Propane at 75 Gal @ $2.48 | $186.00 | |
| Inventory | $3,672.40 | |
| Deposits | | $4,300.00 |
| | | |
| Government Recording and Transfer Charges | | |
| Recording Fee (Deed) to eTRCO, LLC. | $16.00 | |
| Recording Fee (Mortgage) to eTRCO, LLC. | $64.00 | |
| | | |
| Miscellaneous | | |

Copyright 2015 American Land Title Association.
All rights reserved.

Page 1 of 3

**EXHIBIT**
**3**

File # 6617FPT
Printed on: 07/16/24 3:41 PM

Docusign Envelope ID: 41F325A7-EC01-4F6B-9B50-BE4A61E7EAF1

| Description | Borrower/Buyer | |
|---|---|---|
| | Debit | Credit |
| Closing Fee to Flathead Premier Title - Kalispell Branch | $600.00 | |
| Erecording to eTRCO, LLC. | $10.00 | |
| Water Rights Transfer x 1 to DNRC | $50.00 | |
| Long Term Set Up Fee to Payment Servicing Corp | $1,000.00 | |
| | Borrower/Buyer | |
| | Debit | Credit |
| Subtotals | $3,500,598.40 | $3,501,002.54 |
| Due To Borrower | $404.14 | |
| Totals | $3,501,002.54 | $3,501,002.54 |

Copyright 2015 American Land Title Association.
All rights reserved.

File # 6617FPT
Printed on: 07/16/24 3:41 PM

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Flathead Premier Title Company, LLC to cause the funds to be disbursed in accordance with this statement.

Value Added Holdings III, LLC

_____          _____
By Dustin Bradford, Member                      7/16/2024
                                                              Date

_____          _____
Samantha Vondrich                                    7/16/2024
                                                              Date

## CONTRACT FOR DEED

**SELLER:**            Mule Shoe Outfitters, LLC
                       P.O. Box 322
                       West Glacier, MT 59936


**PURCHASER:**         Value Added Holdings III, LLC
                       c/o Dustin Bradford
                       2617 N. 82nd Street
                       Mesa, AZ 85207


**TITLE COMPANY:**     Flathead Premier Title Company, LLC
                       53 4th Ave. East N
                       Kalispell, MT 59901


**ESCROW AGENT:**      Payment Servicing Corporation
                       42 Village Loop
                       Kalispell, MT 59901

**EXHIBIT 4**

## CONTRACT FOR DEED

THIS CONTRACT FOR DEED, ("**Contract**") made and entered into this $\underline{17}$ day of $\underline{July}$, 2024 (the "**Effective Date**"), by and between:

> Muleshoe Outfitters, LLC
> c/o Virginia & Paul Detoni
> P.O. Box 322
> West Glacier, MT 59936

herein referred to as "**Seller**"; and

> Value Added Holdings III, LLC
> c/o Dustin Bradford
> 2617 N. 82nd Street
> Mesa, AZ 85207

herein referred to as "**Purchaser**";

## W I T N E S S E T H:

In consideration of the mutual covenants, agreements and payments as herein set forth, and the faithful performance of all covenants hereinafter mentioned to be mutually performed by the parties, said Seller and Purchaser do hereby agree as follows:

1.    Real Property:

Seller shall sell and convey to Purchaser, in fee simple, free and clear of all encumbrances except as may be of record and listed in the Commitment (defined below) and the Permitted Encumbrances (defined below), by good and sufficient warranty deed, that certain real property and improvements ("**Real Property**") situated in the County of Flathead, State of Montana, more particularly described as follows:

> That portion of Government Lot 4, Section 2, Township 31 North, Range 19 West, P.M.M. Flathead County, Montana, described as follows:
>
> Parcel A of Certificate of Survey No. 20952
>
> SUBJECT TO:
>
> Reservation by the United States of America of oil and gas rights and right of way for ditches and canals, as reserved in Patent, recorded June 9, 1986, as Doc. No. 86-160- 14070, records of Flathead County, Montana.

Contract for Deed
4872-4115-3996.v4

Easement for an electric transmission and distribution line granted to Flathead Electric Cooperative, Inc. recorded on June 9, 1986, as Doc. No. 86-160-14110, records of Flathead County, Montana.

Easement for telephone facilities granted to Northwestern Telephone Systems, Inc. recorded June 12, 1986, as Doc. No. 86-163-15060, records of Flathead County, Montana.

Resolution No. 1049-A by the Board of County Commissioners for Canyon Area Land Use Regulatory System recorded January 6, 1995 as Doc. No. 95-006-12550, records of Flathead County, Montana.

Subject to any and all easements, covenants, reservations, or restrictions of record, including the exceptions listed on the title commitment (the "**Commitment**") issued by Flathead Premier Title Company, LLC dated March 15, 2024 (File No. 6617FPT) (collectively, together with all items descried in this Section 1, the "**Permitted Exceptions**").

2.    Personal Property:

In addition to the Real Property, Seller shall sell and assign to Purchaser certain items of personal property described on Exhibit "A" attached hereto via bill of sale (the "**Personal Property**"). The term "**Property**", as used in this Contract means, unless otherwise provided or the context clearly indicates, both Real Property and Personal Property.

3.    Price and Terms:

Purchaser covenants and agree to pay to Seller for the Property the sum of THREE MILLION, FOUR HUNDRED AND NINETY-FIVE THOUSAND AND NO/100THS DOLLARS ($3,495,000.00) in lawful money of the United States, together with interest on the unpaid principal balance at the rate of FIVE percent (5.00%) per annum, with a balloon payment due at the end of the five (5) year term that begins on the Effective Date and ends on the five year anniversary of the Effective Date (the "**Term**").

4.    Down Payment:

Purchaser deposited $35,000.00 earnest money (the "**Earnest Money**") with the Title Company on April 1, 2024. At Closing (defined below) the Earnest Money and an additional cash payment of $715,000.00 for a total payment of $750,000 ("**Closing Payment**") shall be paid to Seller. For purposes of this Contract, Closing means the mutual execution and delivery of this Contract, payment of the Closing Payment to Seller, and the deposit of this Contract, and all other documents and instruments required hereunder to be deposited with the Escrow Agent (defined below) (the "**Closing**"). The Closing Payment will be reduced only by amounts required to be paid by Seller at Closing in accordance with the settlement statement or as provided in the Buy-Sell Agreement (Commercial) dated March 7, 2024 between Seller and Purchaser, as amended by

3

the Counter Offer dated March 15, 2024 and by that Amendment to Buy-Sell Agreement (Commercial) dated June 28, 2024. (as amended, the "**Buy-Sell Agreement**").

      5.     Unpaid Principal Balance and Interest:

The unpaid principal balance due on this Contract is $2,745,000.00, which shall be payable in accordance with the promissory note of even date herewith (the "**Promissory Note**").

      6.     Payments:

The parties hereto understand and agree that the payments due from Purchaser under this Contract, except for the Closing Payment, but including payments of taxes and insurance premiums, and all documents and instruments required to be deposited under this Contract shall be paid to or deposited with, as the case may be, Payment Servicing Corporation (the "**Escrow Agent**"), which the parties hereby nominate and appoint. Escrow Agent shall promptly release all interest payments to Seller upon receipt and shall release insurance and tax payments made by purchaser to the appropriate parties. . The parties agree to act in good faith and execute and deliver Escrow Agent's customary agreement(s) requested by Escrow Agent for its services hereunder. If there is a conflict between the terms and provisions of this Contract and the Escrow Agent's agreement, the terms and provisions of this Contract shall control.

Purchaser shall make annual interest payments in the amount of $137,250 on or before December 31st of each year during the Term. The interest payment for 2024 shall be prorated from the date of Closing and the interest portion of the final payment due at the end of the Term shall be prorated. At the end of the Term, Purchaser shall pay in full the remaining principal balance due and accrued and unpaid interest shall be due and payable in full.

If Purchaser makes a payment in excess of the interest only amount prior to the final balloon payment, all payments made under this Contract shall be applied first to accrued interest then due and then to principal. Interest accruing on the reduced principal balance will then be adjusted as of the date of the principal paydown(s).

      7.     Prepayment:

The Purchaser shall have the right to prepay all or any portion of principal due at any time without penalty. As an incentive for prepayment, if Purchaser pays the entire principal balance due together with all accrued and unpaid interest at any time prior to the three-year anniversary of the date of Closing (the "**Incentive Date**"), Seller shall credit 25% of the interest payments paid prior to the Incentive Date to the principal balance due instead of towards interest. Purchaser shall forfeit its right to the credit described above if it is in default hereunder at any time prior to or on the Incentive Date and whether or not any such default has been cured or is in the process of being cured. A default caused by bank error or other reason not attributable to an act or omission of Purchaser will not cause a forfeiture if it is timely cured.

      8.     Taxes:

The Seller shall pay all taxes and assessments levied and assessed against the Property prior to the date of Closing; provided that any such taxes and assessments for the year shall be pro-rated

Contract for Deed
4872-4115-3996.v4

as of the date of Closing. Purchaser agrees to pay to Escrow Agent, at least seven (7) Business Days before delinquency, all taxes and assessments levied and assessed against the Property accruing after the Closing so that Escrow Agent can make the payments to the appropriate taxing authorities. "**Business Day**" means any day excluding weekends and public holidays in which normal business operations are conducted in the State of Montana.

9.  Possession:

Purchaser may take possession on the date of Closing.

10.  Default:

The parties agree that time is of the essence as to the terms and conditions contained in this Contract. If Purchaser fails to make any payments required hereunder when due, fails to perform or is in violation of any of the other covenants or requirements contained herein, or otherwise breaches any of the terms or provisions of this Contract, and if it fails to remedy such breach within (i) thirty days, for any default regarding payments due, or (ii) thirty days for any non-monetary default, after delivery of a written notice specifying the nature of such default, then Purchaser's default shall have been established, and in that event, this Contract may, at the option of Seller, and without further notification of any kind, (1) be declared forfeited and terminated and all rights of Purchaser hereunder shall be null, void and at an end with Seller to be immediately reinvested with all right, title and interest in the Property hereby agreed to be conveyed or assigned and with Seller being relieved of all further obligations under the Contract. In this event, Purchaser agrees that it will promptly give and surrender possession of the Property back to Seller and Seller is authorized to immediately retake possession of the Property and the Escrow Agent is authorized and directed to return the contents of the escrow to Seller without the necessity of obtaining Purchaser's consent or signature. **All payments made by Purchaser under this Contract shall be forfeited and shall be retained by Seller as a reasonable rental for the Property**. Such payments shall not relieve Purchaser of its responsibility to Seller for any damages to the Property or attorneys' fees, costs or expenses as provided for in this Contract; or (2) continue in force and effect and without further notice, accelerate the payments due under the Contract. Seller shall be entitled to bring an action to recover all remaining sums to be paid under the Contract, together with attorneys' fees and costs of recovery. The written notice referred to above shall be sent by certified mail to Buyer at its address as set forth on the first page of this Contract. Personal delivery to Buyer of any such notice at its address shall also be sufficient service. If Buyer changes its address for notice, then it shall provide Seller and Escrow Agent notice in writing of the new notice address and any notice sent to the old address before Buyer notifies Seller and Escrow Agent of the new address shall be valid and fully effective.

Any payment that is not paid when due hereunder shall accrue interest at a default rate of 12% per annum from the due date until the date of payment. The default interest shall be due when

5

the payment is made, and the payment will not be considered paid in full until and unless the payment and the default interest is paid in full.

Seller's rights and remedies are cumulative and the use of any one right or remedy by Seller is not an election of such remedy and shall not preclude or waive its right to use any or all other remedies whether legal or equitable in nature.

11.    Notice:

It is agreed that any written notice required hereunder may be served personally via overnight delivery or by registered or certified mail upon the Purchaser at the address of said Purchaser as first hereinabove set forth. Notice given by registered or certified US mail is deemed given 5 Business Days after the date of mailing. Notice delivered by personal service or overnight delivery will be effective upon delivery.

12.    Title:

Legal title to all of the Property shall remain in the Seller until payment of the purchase price in full, together with performance of all the terms and conditions of this Contract. Conveyance of the Property shall be by Warranty Deed, subject to the Permitted Exceptions, including without limitation all reservations and restrictions in patents from the United States of the State of Montana; existing easements, encroachments and rights of way of record as of the date of this Agreement; mineral, oil and gas and royalty reservations, conveyances and leases of record as of the date of this Agreement; all real property taxes and assessments for the current year and subsequent years; and all building and use restrictions, covenants, agreements, requirements, notices, waivers, and conditions of record as of the date of this Agreement; and further subject to such liens, encumbrances, and conditions as have been or are suffered or imposed by the Purchaser or otherwise after the date of Closing. The parties shall execute and cause the Title Company to record a Notice of Purchaser's Interest to give public notice of Purchaser's interest in the Property and this Contract.

To facilitate clearing Seller's title in the event of Purchaser's default, Purchaser shall execute a Quit Claim Deed to Seller and an Estoppel Affidavit, which shall be held by the Escrow Agent along with the Warranty Deed, Notice of Purchaser's interest, bill of sale, original of this Contract, and other documents reasonably required to effectuate the purposes and intent of this Contract. Purchaser hereby irrevocably appoints the Seller as Purchaser's attorney-in-fact to complete any references to the recorded Notice of Purchaser's Interest which are left blank in Purchaser's Quit Claim Deed (this is a power coupled with an interest). The execution of this Quit Claim Deed shall not relieve Purchaser from the obligation to execute and deliver to the Seller such other documents as may reasonably be required to clear Seller's title to the Property of any interest or claim of Purchaser upon termination of this Contract under the Default provisions.

13.    Insurance:

The Purchaser agrees to obtain and maintain with a good and reputable insurance company reasonably acceptable to Seller insurance on the Real Property and Personal Property of such type

6

or types and amounts in at least the full insurable value of the Property. All policies of insurance will name the Seller as primary loss payee, co-insured or lien holders, as appropriate and as directed by Seller's insurance broker. Prior to Closing, Purchaser shall deliver to Seller, a declaration page of the insurance coverage or other adequate evidence of the insurance coverage, as determined by Seller, and notices of renewals of all policies shall be sent to Seller and Escrow Agent immediately upon receipt by Purchaser. Purchaser shall cause the original policies to be filed with the Escrow Agent and to be in good standing at all times. The policies shall require that any notices of cancellation or non-renewal or of circumstances that could negatively affect any policy on any Property be sent to Seller and Escrow Agent.

14.    Damages and Insurance and Condemnation Proceeds:

Purchaser hereby absolutely and irrevocably assigns to Seller, and authorizes the payor to pay to Seller, the following claims, causes of action, awards, payments and rights to payment: (i) all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use which materially affects all or part of the Real Property or any interest in it; (ii) all proceeds of any insurance policies payable because of loss sustained to all or part of the Property; and (iii) all interest which may accrue on any of the foregoing. Any amounts in excess of all amounts owed under this Contract for Deed shall be paid to Purchaser. Purchaser shall immediately notify Seller and Escrow Agent in writing if any damage occurs or any injury or loss is sustained in the amount of $25,000 or more to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced.

15.    Title:

The Title Company shall issue, subject to satisfaction of all requirements of the Title Company, a standard coverage ALTA title insurance policy on its customary form for a contract for deed insuring Purchaser's equitable interest in the Real Property, subject to the Permitted Exceptions including the usual printed exceptions and at Closing Seller will deliver to the Escrow Agent a warranty deed conveying the same.

16.    Independent Investigation:

The Purchaser agrees and represents that it has conducted an independent investigation and inspection of the Property and has entered into this Contract in full reliance thereon, and that there are no other agreements, verbal or otherwise, modifying or affecting the terms hereof, and that they are not relying on oral representations made by the Seller or its agent(s).

17.    Liens:

Purchaser shall keep said Property free and clear of all liens, charges and encumbrances of any kind whatsoever, including without limitation mechanics' or materialmens' liens, judgment liens and environmental liens, except for the Permitted Encumbrances, during the existence of this Contract, and the Purchaser shall indemnify Seller from any loss arising from any liens that might be filed against the Seller's interest in all or part of the Property by reason of any act or omission of the Purchaser. Purchaser shall immediately discharge any lien on the Property which Seller has not consented to in writing. Purchaser shall pay when due, each obligation secured by or reducible

7

to a lien, charge or encumbrance which now does or later may encumber or appear to encumber all or part of the Property or any interest in it.

    18.    Indemnification;

    Purchaser agrees to indemnify and hold completely harmless Seller, its affiliates, agents, members, managers, successors and assigns, from and against any and all claims, losses, liabilities, deficiencies, costs, damages and expenses, including costs, reasonable attorneys' fees, charges and disbursements incurred or that may be incurred on or in any way related to the Property or Purchaser's possession thereof after the date of Closing, including, without limitation, third-party claims for bodily injury, mental anguish, emotional distress, lost wages, wrongful death other general damages, or damage to the Property or any part thereof irrespective of cause of alleged cause

    19.    Restriction on Assignment Lease or Resale:

    The parties agree that Purchaser shall not sell, assign, lease, or transfer all or any part of Purchaser's interest in this Contract, or in any of the Property (or any part thereof) other than personal property sold or transferred in the ordinary course of business, without first having obtained Seller's written consent, it being specifically understood that a breach of this covenant shall constitute a default under the terms of this Contract. Said consent shall not be unreasonably withheld, but Purchaser shall provide Seller, simultaneously with Purchaser's request for any such action, with reasonably sufficient documentation to determine the financial condition, creditworthiness and identify of individuals associated with any assignee, lessee or transferee. The prohibition on Purchaser's assignment of this Contract and the Property is intended to be interpreted broadly and includes any transfer or assignment of any interest in the Purchaser entity, or a conversion, merger or exchange involving any of the equity interests in the Purchaser entity.

    20.    Waste and Repairs; Maintenance of Property:

Purchaser agrees to keep the Real Property and all buildings and other improvements on the Real Property and the Personal Property in good repair and upkeep and to preserve the same in at least as good condition as they were at the date of this Contract, reasonable wear and tear alone excepted, and Purchaser further agrees neither to permit nor cause any waste on the Real Property, or with respect to any improvements thereon including any waste that arises out of the use, disposal, or storage of any substance which is or becomes designated as a hazardous material under any Federal, State or Local statute or regulation pertaining to hazardous substances and materials. Purchaser shall perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value. Purchaser shall not remove or demolish the Real Property or any part of it, or alter, restore or add to the Real Property (except as may be necessary in connection with repairs of any damage to the Real Property), or initiate or allow any change in any zoning or other land use classification which affects the Real Property or any part of it without Seller's express prior written consent in each instance, which shall not be unreasonably withheld if the alteration or change is not to a structural component of a building (defined to include the following items, provided the item is a constituent part of, and integrated into, an inherently permanent structure: Walls; partitions; doors; wiring; plumbing systems; central air conditioning and heating systems; pipes and ducts; elevators and escalators; floors; ceilings;

permanent coverings of walls, floors, and ceilings; insulation; chimneys; fire suppression systems, including sprinkler systems and fire alarms; fire escapes; security systems; humidity control systems; and other similar property) or reasonably expected to create a default under this Contract. If Seller gives its consent as required, any improvements of any kind placed upon the Real Property by Purchaser while this Contract is in force shall be deemed to be attached to the Real Property and must be left in their normal state and condition in the event of default and termination of Purchaser's rights.

Except for any existing noncompliance set forth in Section 21, Purchaser shall comply with all laws applicable to the Property and give prompt notice to Seller and Escrow Agent of any notice received by Purchaser related to a violation of any applicable law. Purchaser shall not commit or allow any act upon or use of the Property which would violate any public or private covenant, condition, restriction or equitable servitude affecting the Real Property. Purchaser shall not bring or keep any article on the Property or cause or allow any condition to exist on it, that could invalidate or would be prohibited by any insurance coverage required to be maintained by Purchaser on the Property or any part of it hereunder.

21.    Purchaser Takes Property "AS IS":

Purchaser acknowledges that it has examined and inspected the Property and improvements and is fully familiar and acquainted therewith, and that Purchaser is buying this Property **"AS IS"** based solely on its own investigations and not because of any warranty, representation, information or promises made by Seller or anyone acting for or on behalf of Seller, which are not specifically set forth in this Contract.

Purchaser understands that the building currently located on the Real Property is not in compliance with setback requirements set forth in the Canyon Area Land Use Regulatory System, Resolution No. 1049A, Document No. 9500612550, records of Flathead County, Montana, and further understands that even though the Real Property is appraised and taxed by the State of Montana as a commercial property, that the local governing authorities may not recognize it as such and may attempt to prohibit any commercial use of the building located on the Real Property. Purchaser is nonetheless willing to proceed with Closing, and accepts all risks associated with the above, and agrees to hold the Seller harmless from any and all enforcement actions taken by the local governing authorities associated with the same.

22.    Seller's Option to Pay Obligations:

If Purchaser fails to pay taxes (or installments on special assessments) before delinquent, premiums on insurance when due, liens, or any other obligation in connection with the Property that is to be paid by the Purchaser, Seller shall have the right, but not the obligation, to make such payments. All such sums expended by Seller shall be deemed a part of the principal immediately due and owing to the Seller hereunder and shall bear interest at the rate of twelve percent (12%) per annum until repaid.

9

23.    Escrow:

It is hereby agreed that the Warranty Deed, Quitclaim Deed, the Bill of Sale, Notice of Purchaser's Interest, Estoppel Affidavit, a duplicate of this Contract, a duplicate of the Buy-Sell Agreement, and other such documents agreeable to the parties shall be placed in escrow with instructions to the Escrow Agent, and this Contract shall be deemed to be such instructions, to receive such payments on behalf of Seller.

Upon full and final payment to Seller of all amounts due under this Contract, the Escrow Agent is authorized and directed to deliver to Purchaser the contents of the escrow maintained by Escrow Agent hereunder.  Purchaser acknowledges and agrees that it is entitled to the contents of the escrow only on the condition that Purchaser has made all required payments hereunder to Seller and complied with all requirements of this Contract.  Upon default hereunder this is not cured within the time required, and upon Seller declaring the Contract terminated as described herein, Escrow Agent shall deliver to Seller the contents of the escrow held by Escrow Agent without the necessity of obtaining Purchaser's release or consent or approval of any kind.

Purchaser shall pay all fees and costs due to Escrow Agent.

24.    Due on Sale:

In the event of a sale of the Property to a third-party purchaser prior to payment of all amounts due to Seller under this Contract, Seller shall be entitled to payment in full of all amounts owed pursuant to this Contract without deduction or offset and Purchaser shall be entitled to the balance of the sale proceeds.

25.    Attorney Fees:

If either party is brings an action for the enforcement or interpretation of this Contract and/or any relating instrument or any obligation ancillary hereto, then the defaulting party or the losing party in the case of an action, agrees to pay, on demand, all costs, charges and expenses, including reasonable attorney's fees, reasonably incurred at any time by the other party because of the default.

26.    Drafting of Document & Representations and Warranties:

This Contract has been negotiated by both parties, and any dispute over the terms contained herein shall not be construed against either party. The parties further warrant and represent that: 1) they have authority to enter this Contract; 2) the person signing on behalf of any party has been authorized by all necessary action to execute this Contract on behalf of such party; 3) they have received adequate disclosure concerning the subject matter of this Contract; 4) they have had an opportunity to seek legal and tax advice in connection with this Contract; and 5) they are not relying on any representation (oral or written) or information not expressed explicitly in this Contract.

10

27.    Entire Agreement & Severability:

This Contract, including the Buy-Sell Agreement which is incorporated by this reference into the Contract, contains the entire agreement, and it supersedes and replaces all prior written or oral agreements between the parties except as specifically set forth in this Contract. This Contract cannot be altered or amended except as agreed by the parties in writing. In the event that one or more of the provisions of this Contract shall be deemed invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of all the remaining provisions contained herein will not in any way be affected or impaired. The provisions of this Contract shall control over any conflicting provisions contained in the Buy-Sell Agreement.

28.    Waiver:

No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver with respect to any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Contract shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

29.    Further Assurances:

Each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated hereby.

30.    Time of Essence and Binding Effect:

It is mutually agreed by and between the parties hereto that the time of payment shall be an essential part of this Contract, and that all of the covenants and agreements herein contained shall extend to and be binding upon the heirs, personal representatives and permitted assigns of the respective parties.

31.    Counterparts:

This Contract may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall constitute one and the same instrument. A signed copy of this Contract delivered by facsimile, email, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page blank – Signatures Follow]*

11

IN WITNESS WHEREOF, the parties have executed this contract as of the day and year above written.

**SELLER:**

MULE SHOE OUTFITTERS, LLC, a Montana limited liability company

By: _Virginia C. Detoni_

Name: Virginia C. Detoni

Its: Member

By: _Paul Detoni_

Name: Paul Detoni

Its: Member

STATE OF MONTANA )
                    : ss.
County of Flathead )

On _July 1st 2024_ before me, _Kimberly Christian_, Notary Public, personally appeared Virginia C. Detoni and Paul Detoni, as the Members of Mule Shoe Outfitters, LLC, a Montana limited liability company, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged to me that they executed the same willingly, for the purposes described herein, and in their authorized capacities, and that by their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Notarial Seal the day and year in this certificate first above written.

(SEAL)

```
KIMBERLY CHRISTIAN
NOTARY PUBLIC for the
State of Montana
Residing at Columbia Falls, Montana
My Commission Expires
January 23, 2028
SEAL
```

_____

SIGNATURE

_Kimberly Christian_

PRINT OR TYPE NAME

Notary Public for the State of Montana

12

**PURCHASER:**

VALUE ADDED HOLDINGS III, LLC, an
Arizona limited liability company

By: *Dustin Bradford*

Name: Dustin Bradford
Its: Manager


STATE OF Washington )

                   : ss.

County of Skagit )

On 07/03/2024 before me, Kyle Beam , Notary Public, personally appeared Dustin
Bradford as Manager of Value Added Holdings III, LLC, an Arizona limited liability company,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) are
subscribed to the within instrument and acknowledged to me that they executed the same willingly,
for the purposes described herein, and in their authorized capacities, and that by their signatures
on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

(SEAL)

KYLE BEAM
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION # 210008
COMMISSION EXPIRES 09/11/2027

SIGNATURE

Kyle Beam

PRINT OR TYPE NAME
Notary Public for the State of Washington

Notarized remotely online using communication technology via Proof.

13

**EXHIBIT A**
(List of Personal Property to be Assigned)

[To be completed by the parties.]

Tent - Lawn - ~~Artrifal~~ Artificial Turf   rLawn $100,000

Gringo Business - $150,000

14

4886-9626-8489.v2

## BILL OF SALE

MULE SHOE OUTFITTERS, LLC ("**Seller**"), does hereby bargain, sell, grant, and convey unto VALUE ADDED HOLDINGS III, LLC ("**Buyer**") all of Seller's right, title, and interest in the personal property used in the business of the Wandering Gringo Cafe and listed on Exhibit A (the "**Personal Property**"). The $3,495,000 sale price for the real property and Personal Property is allocated $250,000 to the Personal Property.

TO HAVE AND TO HOLD, the same unto Buyer, its heirs and assigns forever, and the Seller warrants that Seller is the owner of the Personal Property conveyed hereby, free of all rights, claims or encumbrances by any party whatsoever.  However, Buyer acknowledges that the Personal Property is conveyed to Buyer in an "as-is" condition, with no representations or warranties of condition, or otherwise.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale dated the 1st day of July, 2024.

**GRANTOR:**

MULE SHOE OUTFITTERS, LLC, a
Montana limited liability company

By: _____

Name: Virginia C. Detoni

Its: Member

By: _____

Name: Paul Detoni

Its: Member


STATE OF Montana )

)  ss.

County of Flathead )

    On this 1ˢᵗ day of July , 2024, before me, a notary public for the State of
Montana , personally appeared Virginia C. Detoni and Paul Detoni, known to me to be
the persons whose names are subscribed to the within instrument and the Members of Mule Shoe
Holdings, LLC, a Montana limited liability company, and acknowledged to me that they
executed the same.

    IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the
day and year hereinabove first written.



KIMBERLY CHRISTIAN
NOTARY PUBLIC for the
State of Montana
Residing at Columbia Falls, Montana
My Commission Expires
January 23, 2028

**Wandering Gringo Asset & Equipment List for Bill of Sale**

| Location | Item # | Item Description |
|---|---|---|
| Rear of Property | 1 | Metal Event Structure |
| Rear of Property | 2 | Venue Tarp |
| Rear of Property | 3 | Catering Bar |
| Rear of Property | 4 | Wedding Canopy |
| Rear of Property | 5 | Artificial Grass Surface |
| Rear of Property | 6 | Old Cart |
| Front Building | 7 | Bar / Countertop Structure |
| Front Building | 8 | Overhead Lights |
| Front Building | 9 | All Cabinets Affixed to the Building |
| Patio | 10 | Certain Chairs TBD Prior to Closing |
| Patio | 11 | Certain Exterior Decorations TBD Prior to Closing |
| Patio | 12 | All Planters/Fire Pits Affixed or Sitting on on Patio or Property |
| Basement | 13 | All Affixed Shelving and Cabinets |
| Basement | 14 | Fryer and Reach-In Freezer |
| Basement | 15 | Smallware's for Operation of Gringo |
| Basement | 16 | Non-Perishable Inventory for Operation of Gringo |
| Loft | 17 | All Non-Personal Fixtures, Ladder to Ceiling |
| Gift and Storage Trailer | 18 | Trailer including Walk Up Ramp |
| Gift and Storage Trailer | 19 | All Non Personal Catering Furniture, Fixtures and Lights |
| Gift and Storage Trailer | 20 | All Non Personal Tables, Chairs, Foodservice Equip |
| Gift and Storage Trailer | 21 | All Picnic Tables and Seating |
| Gringo Food Truck | 22 | Food Truck Including Propane Tank |
| Gringo Food Truck | 23 | All Equipment Inside Food Truck |
| Gringo Food Truck | 24 | All Inventory for Operation of Food Truck |
| Wickenburg Shed | 25 | All Refrigeration within Shed |
| Wickenburg Shed | 26 | All Smallware's within Shed |
| Wickenburg Shed | 27 | All Inventory for Operation of Food Truck |
| Bathroom Shed | 28 | All Fixtures |
| Signage | 29 | All Signage for Operation of Business |
| Web Portals | 30 | All Web Portal Login and Administrative Codes |
| Exterior | 31 | All Picnic Tables and Chairs |
| Exterior | 32 | Bathtub Flower Fixture |
| Exterior | 33 | Washtub Flower Fixture |
| Exterior | 34 | Green Canoe Flower Fixture |
| Exterior | 35 | All Fencing and Permanent Fixtures |
| Exterior | 36 | Tents & Seating for Gringo |

(handwritten note next to items 7–10) chairs used in the business are included. personal patio furniture is not.

(handwritten note next to items 13–16) one fire pit and 2 planters

(handwritten note at bottom) Replace 15, 16, 24, and 27 with all food inventory*, tableware, serveware, and cookware used in the operation of the business.

*note that food inventory is not included in the purchase price and is a buyer debit item on the Settlement Statement.

## PROMISSORY NOTE

$2,745,000.00                                                      July 16th, 2024

FOR VALUE RECEIVED, VALUE ADDED HOLDINGS III, LLC, an Arizona limited liability company ("**Borrower**"), promises to pay to MULE SHOE OUTFITTERS, LLC, a Montana limited liability company ("**Lender**"), or its order, c/o Payment Servicing Corporation, 42 Village Loop, Kalispell, MT 59901, or at such other place as may be designated in writing by Lender, without setoff or deduction, the principal sum of $2,745,000.00, together with interest at the rate, in the amounts, and in the manner set forth in this Promissory Note ("**Note**").

### Maturity Date; Interest Rate

The term of this Note commences on the date hereof and ends, or matures, on July 17th, 2029[1] ("**Maturity Date**"). This Note bears interest at the rate of 5% per annum ("**Interest Rate**").

### Monthly Payments; Final Payment.

The accrued interest on the outstanding principal balance due under this Note must be paid in annual installments ("**Annual Payments**") of interest only in the amount of $137,250.00 due each year on or before December 31st of each year.

The interest payment for 2024 shall be prorated from the date of Closing and the interest portion of the final payment due at the end of the Term shall be prorated. At the end of the Term, Purchaser shall pay in full the remaining principal balance due and accrued and unpaid interest shall be due and payable in full.

A final payment must be paid ("**Final Payment**") on the date this Note matures, whether at the Maturity Date , by acceleration, or otherwise, in amount of the outstanding principal balance of this Note, plus any Late Charge, and accrued and unpaid interest.

### Late Charge; Late Rate.

Borrower will make and Lender will have received all Monthly Payments within five days (calculated by including the due date) of the date that payment is due and payable. If any Monthly Payment due under this Note is not received by Lender on or before that date, Borrower will pay a late charge ("**Late Charge**") in an amount equal to 5% of the delinquent payment. Any payment upon which a Late Charge is due will not be deemed to have been paid until Borrower has also paid the Late Charge.

All payments due under this Note will be applied first against any Late Charge (defined below), then against accrued interest, and then against the outstanding principal amount due under this Note. Each interest rate referred to in this Note will be calculated based on a 360-day

---

[1] On the fifth year anniversary of the Effective Date.



EXHIBIT
5

year of 12 - 30-day months. Borrower must pay all amounts due under this Note in lawful money of the United States of America.

If the Final Payment under this Note is not paid when due, including any acceleration of the Final Payment due to a default by Borrower, then the outstanding principal balance of this Note will bear interest, from that due date until the date of the payment, at the rate of twelve percent (12%) per annum ("**Late Rate**").

**Prepayment.**

Borrower shall have the right to prepay all or any portion of principal due at any time before the Maturity Date without penalty. As an incentive for prepayment, if Borrower pays the entire principal balance due together with all accrued and unpaid interest at any time prior to the three-year anniversary of the date of Closing (July 17 2027) (the "**Incentive Date**"), then, so long as Borrower is not in Default and has not been in Default prior to the Incentive Date (as provided in the Contract for Deed (defined below)), then Lender shall credit 25% of the interest payments paid prior to the Incentive Date to the principal balance due instead of towards interest. A default caused by bank error or other reason not attributable to an act or omission of Borrower will not cause a forfeiture if it is timely cured.

**Security.**

This Note is delivered pursuant to and in connection with the certain Contract for Deed executed between Borrower as "Purchaser" and Lender as "Seller" dated July 17th, 2024 (the "**Contract for Deed**"). This Note is governed by and is entitled to the benefits and security contemplated by the Contract for Deed.

**Default.**

The occurrence of any of the following events or conditions will constitute an "**Event of Default**" under this Note:

(a)    Any failure to pay any sum due under this Note or the Contract for Deed, subject to the notice and cure periods provided in the Contract for Deed;

(b)    The filing by Borrower (or against Borrower to which Borrower acquiesces or that is not dismissed within 45 days after the filing thereof) of any proceeding under the federal bankruptcy laws now or hereafter existing or any other similar statute now or hereafter in effect; the entry of an order for relief under such laws regarding Borrower; or the appointment of a receiver, trustee, custodian or conservator of all or any part of the assets of Borrower;

(c)    Any levy or execution upon, or judicial seizure of, any portion of the Property (as defined in the Contract for Deed) and collateral under the Contract for Deed;

(d)    The institution of any legal action or proceedings to enforce any lien or encumbrance upon any portion of the Property that is not dismissed within 20 days after Borrower becomes aware thereof;

(e)    Borrower or any of its members or managers is criminally indicted or convicted for (i) a felony or (ii) violating any state or federal law (including the Controlled Substances Act, Money Laundering Control Act of 1986 and Illegal Exportation of War Materials Act) that could lead to forfeiture of the Property; and

(f)    The occurrence of any default or Borrower's failure to comply with any of the terms or covenants under the Contract for Deed and the expiration of any applicable notice and cure period, if any.

Upon the occurrence of an Event of Default, then or thereafter, Lender may, at its option and without notice or demand, declare the outstanding principal balance, any Late Charge, and all accrued and unpaid interest due and payable in full without any requirement for presentment, demand, protest, or other notice of any kind. In addition, upon an Event of Default, all amounts owing under this Note will accrue interest at the Late Rate, and Lender may exercise the remedies available to Lender at law and in equity, under this Note, and under the Contract for Deed.

**Miscellaneous.**

Borrower and any endorsers of this Note waive diligence, demand, presentment for payment, notice of nonpayment, protest, notice of dishonor and notice of protest, and specifically consent to and waive notice of any renewals, modifications or extensions of this Note, whether in favor of Borrower or any other person or persons, and waive any defense by reason of extension of time for payment or other indulgence granted by Lender.

No delay or failure of Lender in exercising any right under this Note, or the Contract for Deed will affect that right, nor will any single or partial exercise thereof or any abandonment or discontinuance of steps to enforce that right preclude any further exercise thereof or the exercise of any other right. The rights of Lender are cumulative and not exclusive of any rights which Lender would otherwise have. Any waiver, permit, consent, or approval of any kind or character on the part of Lender of any breach or default under this Note, or of any provision of this Note, must be in writing and will be effective only to the extent specifically set forth in that writing. No notice to or demand on Borrower will entitle Borrower to any other or further notice or demand in other similar circumstances. A waiver on any one occasion will not be construed as a waiver or bar to any right on any other occasion. All notices, consents, or communications required under this Note must be in writing and will be deemed to have been properly given only if sent by hand delivery, overnight courier, or certified mail, postage prepaid, addressed to the parties at the addresses specified in the Contract for Deed.

Borrower must pay all costs of collection on demand by Lender, including, without limitation, reasonable attorneys' fees and disbursements and costs and fees of appeal; all of which costs may be added to the amounts owing under this Note, together with interest at the Late Rate.

This Note may not be amended or modified except by a written agreement executed by Borrower and Lender.

This Note is to be construed and enforced in all respects in accordance with the laws of the State of Montana. If any provision of this Note is held to be invalid or unenforceable, the other provisions of this Note will remain in full force and effect.

Borrower agrees that in the event of any sale, assignment, transfer, conveyance or other disposition or subjection to any lien (but only if such lien remains on the Property beyond the cure period, as provided in the Contract for Deed), voluntary or involuntary, whether by operation of law or otherwise, of the Property, or any part thereof or any interest therein, the entire unpaid principal balance of this Note together with Late Charges and accrued interest will immediately become due and payable at the option of the Lender. This paragraph does not prohibit Borrower's sale of certain personal property in the ordinary course, as provided in the Contract for Deed.

Whenever used herein the words "Borrower" or "Lender" will be deemed to include, to the extent applicable, the heirs, successors and assigns of Borrower and Lender. Capitalized terms used herein will have their respective meanings given them in the Contract for Deed unless otherwise defined herein.

This obligation binds Borrower and, to the extent applicable, its heirs, successors and assigns, and the benefits hereof inure to Lender and its successors and assigns.

Time is of the essence of this Note and all of the obligations hereunder.

EXECUTED as of the date first set forth above.

**BUYER:**

VALUE ADDED HOLDINGS III, LLC, an
Arizona limited liability company

By: *Dustin Bradford*

Name: Dustin Bradford
Its: Manager


STATE OF Washington
) ss.
County of Skagit )

    On this __16__ day of July, 2024, before me, a notary public for the State of
___WA___, personally appeared Dustin Bradford as Manager of Value Added Holdings,
III, LLC, an Arizona limited liability company, known to me to be the person whose name is
subscribed to the within instrument and acknowledged to me that he executed the same and in his
authorized capacity.

    IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the
day and year hereinabove first written.

> KYLE BEAM
> NOTARY PUBLIC
> STATE OF WASHINGTON
> COMMISSION # 210008
> COMMISSION EXPIRES 09/11/2027

                                             *KyB*

Notarized remotely online using communication technology via Proof.

## BILL OF SALE

MULE SHOE OUTFITTERS, LLC (**"Seller"**), does hereby bargain, sell, grant, and convey unto VALUE ADDED HOLDINGS III, LLC (**"Buyer"**) all of Seller's right, title, and interest in the personal property used in the business of the Wandering Gringo Cafe and listed on Exhibit A (the "**Personal Property**"). The $3,495,000 sale price for the real property and Personal Property is allocated $250,000 to the Personal Property.

TO HAVE AND TO HOLD, the same unto Buyer, its heirs and assigns forever, and the Seller warrants that Seller is the owner of the Personal Property conveyed hereby, free of all rights, claims or encumbrances by any party whatsoever.  However, Buyer acknowledges that the Personal Property is conveyed to Buyer in an "as-is" condition, with no representations or warranties of condition, or otherwise.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale dated the _1st_ day of _July_, 2024.

Bill of Sale, Page 1

4888-2735-0475.v1

**EXHIBIT 6**

**GRANTOR:**

MULE SHOE OUTFITTERS, LLC, a
Montana limited liability company

By: _____

Name: Virginia C. Detoni

Its: Member

By: _____

Name: Paul Detoni

Its: Member

STATE OF Montana )

                        ) ss.

County of Flathead )

    On this 1st day of July, 2024, before me, a notary public for the State of Montana, personally appeared Virginia C. Detoni and Paul Detoni, known to me to be the persons whose names are subscribed to the within instrument and the Members of Mule Shoe Holdings, LLC, a Montana limited liability company, and acknowledged to me that they executed the same.

    IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year hereinabove first written.

KIMBERLY CHRISTIAN
NOTARIAL SEAL
STATE OF MONTANA

KIMBERLY CHRISTIAN
NOTARY PUBLIC for the
State of Montana
Residing at Columbia Falls, Montana
My Commission Expires
January 23, 2028

**Wandering Gringo Asset & Equipment List for Bill of Sale**

| Location | Item # | Item Description |
|---|---|---|
| Rear of Property | 1 | Metal Event Structure |
| Rear of Property | 2 | Venue Tarp |
| Rear of Property | 3 | Catering Bar |
| Rear of Property | 4 | Wedding Canopy |
| Rear of Property | 5 | Artificial Grass Surface |
| Rear of Property | 6 | Old Cart |
| Front Building | 7 | Bar / Countertop Structure |
| Front Building | 8 | Overhead Lights |
| Front Building | 9 | All Cabinets Affixed to the Building |
| Patio | 10 | Certain Chairs TBD Prior to Closing |
| Patio | 11 | Certain Exterior Decorations TBD Prior to Closing |
| Patio | 12 | All Planters/Fire Pits Affixed or Sitting on on Patio or Property |
| Basement | 13 | All Affixed Shelving and Cabinets |
| Basement | 14 | Fryer and Reach-In Freezer |
| Basement | 15 | Smallware's for Operation of Gringo |
| Basement | 16 | Non-Perishable Inventory for Operation of Gringo |
| Loft | 17 | All Non-Personal Fixtures, Ladder to Ceiling |
| Gift and Storage Trailer | 18 | Trailer including Walk Up Ramp |
| Gift and Storage Trailer | 19 | All Non Personal Catering Furniture, Fixtures and Lights |
| Gift and Storage Trailer | 20 | All Non Personal Tables, Chairs, Foodservice Equip |
| Gift and Storage Trailer | 21 | All Picnic Tables and Seating |
| Gringo Food Truck | 22 | Food Truck Including Propane Tank |
| Gringo Food Truck | 23 | All Equipment Inside Food Truck |
| Gringo Food Truck | 24 | All Inventory for Operation of Food Truck |
| Wickenburg Shed | 25 | All Refrigeration within Shed |
| Wickenburg Shed | 26 | All Smallware's within Shed |
| Wickenburg Shed | 27 | All Inventory for Operation of Food Truck |
| Bathroom Shed | 28 | All Fixtures |
| Signage | 29 | All Signage for Operation of Business |
| Web Portals | 30 | All Web Portal Login and Administrative Codes |
| Exterior | 31 | All Picnic Tables and Chairs |
| Exterior | 32 | Bathtub Flower Fixture |
| Exterior | 33 | Washtub Flower Fixture |
| Exterior | 34 | Green Canoe Flower Fixture |
| Exterior | 35 | All Fencing and Permanent Fixtures |
| Exterior | 36 | Tents & Seating for Gringo |

chairs used in the business are included. personal patio furniture is not.

one fire pit and 2 planters

Replace 15, 16, 24, and 27 with all food inventory*, tableware, serveware, and cookware used in the operation of the business.

*note that food inventory is not included in the purchase price and is a buyer debit item on the Settlement Statement

## CERTIFICATE OF SERVICE

I, Kimberly S. More, hereby certify that I have served true and accurate copies of the foregoing Complaint - Amended Complaint to the following on 08-15-2024:


Selena Zoe Sauer (Attorney)
1667 Whitefish Stage Rd.
#101
Kalispell MT 59901-2173
Representing: Value Added Holdings III, LLC
Service Method: eService



Electronically signed by Jocelyn Gold on behalf of Kimberly S. More
Dated: 08-15-2024